DRAPER and others, Respondents, vs. BROWN and another,
                    imp., Appellants.

*September 23—October 21, 1902.*

*Waters: Injunction against lowering lake: Joinder of causes of ac-
tion: Parties.*

Where the single purpose of an action by riparian owners was
    to prevent by injunction the lowering of the waters of a lake
    below their accustomed level, a complaint alleging that de-
    fendants owning a milldam at the outlet of the lake drew an
    excessive quantity of water from the lake; that other defend-
    ants withheld at an upper lake the natural flow of a river
    running into the lake in question; and that another obstructed
    the flow of such river, thereby diminishing the water supply
    of the lake, states but one cause of action, in which all the
    defendants are interested,—it appearing that, although they
    acted independently and without concert, their acts united and
    concurred in producing the result complained of.  *Lull v. Fox
    & Wis. Imp. Co.* 19 Wis. 100, distinguished.

. APPEAL from an order of the circuit court for Waukesha
county: JAMES J. DICK, Circuit Judge.  *Affirmed.*

The plaintiffs are the owners of property abutting on Fowler Lake, in the city of Oconomowoc, Wisconsin, each owning tracts in severalty. This lake is fed by the Oconomowoc river, which flows in from the east, and its waters are discharged into La Belle Lake, a few rods west. In 1837 a dam was erected at the outlet, raising the water about nine feet above the natural level, which dam has since been maintained and the water usually kept at an average level of nine feet until about 1893. The land adjoining was overflowed to some extent, and when so maintained the lake was available for boating and fishing purposes. Relying upon these conditions, the plaintiffs have built summer residences, hotels, etc., with boat landings and wharves, and made many improvements to conform to the increased level. The property has become valuable because of these changed conditions, and will be greatly damaged if the water be drawn down. The defendants *Brown* and *Peacock* own the dam and water power and water rights, and have flouring mills operated thereby. Said mills are so situated that the defendants are able at pleasure to draw the water almost entirely from Fowler Lake, and since 1893 they have wrongfully and unnecessarily allowed the water to run through their waste gates, and have unnecessarily drawn the water to an exceedingly low stage, thereby lowering it four feet at a time. By reason thereof the shores of the lake have become marshy, miry, and impassable for boats, and in a very unsanitary condition, generating malaria and breeding sickness. Boathouses, piers, and docks have become useless, and access to the lake from the adjoining property impracticable. The defendants' mill is equipped with old-fashioned water wheels, which require much more water to develop power than modern equipments, which are retained and used as an excuse for drawing the water down to the low stage as stated. The plaintiffs claim the prescriptive right to require the former head of water in the lake to be main-

tained, and allege irreparable damage resulting from the lowering thereof.

The defendant Oconomowoc Waterways Company is a corporation claiming the right to widen and deepen the Oconomowoc river, which has been done, and locks put therein, obstructing and diminishing the flow of water into said lake to some extent, and in that way has participated more or less in lowering the water in the lake. It claims the right to obstruct the flow, and threatens to maintain the obstructions and control the flow, to the injury of the plaintiffs.

The other defendants, who may be called the "Schraudenbach heirs," own and control a milldam and water power at the outlet of Okauchee Lake, from which the waters of the Oconomowoc river flow into Fowler Lake. This dam carries a head of eleven feet. If the water is obstructed either in Okauchee Lake or the Oconomowoc river, it interferes with and lowers the waters in Fowler Lake. Said defendants have at times obstructed the natural flow of the Oconomowoc river, and unnecessarily held the waters back in said lake to a higher point than they have any right to hold the same, and at times have completely stopped the flow of said river; thus interfering with the height of water in Fowler Lake.

The plaintiffs are without any legal remedy, and ask judgment determining the rights of the parties, and a perpetual injunction against all the defendants, restraining them from interfering with the ordinary level of Fowler Lake. The defendants *Brown* and *Peacock* demurred to the complaint on the ground that it did not state facts sufficient to constitute a cause of action, and because several causes of action had been improperly united therein. Such demurrer was overruled, and from an order so entered they have taken this appeal.

For the appellants there was a brief by *Winkler, Flanders, Smith, Bottum & Vilas,* and oral argument by *E. P. Vilas* and *C. A. Vilas.* They contended that the one primary right

claimed by plaintiffs, viz., the right to have the level of Fowler Lake maintained, is alleged to have been violated by several and distinct acts by separate and distinct defendants, and the complaint thus states several causes of action. Pomeroy, Remedies, § 456; *Lull v. Fox & Wis. Imp Co.* 19 Wis. 100; 2 Wait, Pr. 353, 355. These distinct causes of action do not affect all the parties and are therefore improperly joined. *Lull v. Fox & Wis. Imp. Co.* 19 Wis. 100; *Barnes v. Beloit,* 19 Wis. 93; *Turner v. Dutchman,* 23 Wis. 500; *Greene v. Nunnemacher,* 36· Wis. 50, 58; *Hoffman v. Wheelock,* 62 Wis. 434; *Plankinton v. Hildebrand,* 89 Wis. 209; *Hughes v. Hunner,* 91 Wis. 116; *Blakely v. Smock,* 96 Wis. 611; *Endress v. Shove,* 110 Wis. 133, 139; *Hess v. B. & N. F. R. Co.* 29 Barb. 391; *Gardner v. Ogden,* 22 N. Y. 327, 340; *Hines v. Jarrett,* 26 S. C. 480, 2 S. E. 393. See, also, Bliss, Code Pl. § 123; *Jackson v. Brookins,* 5 Hun, 530; *Cook v. Horwitz,* 10 Hun, 586; *Compton v. Hughes,* 38 Hun, 377; *Cleghorn v. Cleghorn,* 79 Hun, 609; *Arkenburgh v. Wiggins,* 13 App. Div. 96; *Bonnell v. Griswold,* 68 N. Y. 294; *Nichols v. Drew,* 94 N. Y. 22; *Arkenburgh v. Wiggins,* affirmed, 162 N. Y. 596; *Rodgers v. Rodgers,* 11 Barb. 965; *Viall v. Mott,* 37 Barb. 208; *House v. Cooper,* 16 How. Pr. 292; *Kelly v. Newman,* 62 How. Pr. 156; *Stanton v. M. P. R. Co.* 2 N. Y. Supp. 298; *Adams v. Stevens,* 27 N. Y. Supp. 993; *Sanders v. Clason,* 13 Minn. 379; *Trowbridge v. Forepaugh,* 14 Minn. 133; *Berg v. Stanhope,* 43 Minn. 176, 45 N. W. 15; *Langevin v. St. Paul,* 49 Minn. 189, 51 N. W. 817; *Woodruff v. Young,* 43 Mich. 548; *Lane v. State,* 27 Ind. 108; *Robinson v. Rice,* 20 Mo. 229; *Farmers' Bank v. Bayliss,* 41 Mo. 274; *Wilson v. Castro,* 31 Cal. 420; *Ghiradelli v. Bourland,* 32 Cal. 585. Several actions against several different defendants cannot be joined to avoid multiplicity of suits. *Hungerford v. Cushing,* 8 Wis. 332, 338; *Seaman v. Goodnow,* 20 Wis. 27; Story Eq. Pl. §§ 271, 286, 530; *Fellows v. Fellows,* 4

Cow. 682; *Winslow v. Jenness,* 64 Mich. 84, 30 N. W. 905; 2 Wait, Pr. 367.

For the respondents there was a brief by *Edwin Hurlbut, John A. Kelly,* and *T. E. Ryan,* and oral argument by *Mr. Kelly.*

BARDEEN, J.   The only question argued in the briefs is whether two or more causes of action have been improperly united in the complaint.   The theory of defendants is that one cause of action is stated against the owners of the water power at the outlet of Fowler Lake for unlawfully decreasing the customary level of the lake, another against the Oconomowoc Waterways Company for obstructing the accustomed flow of the river, and still another against the Schraudenbach heirs for unlawfully withholding water in Okauchee Lake.   At first glance this theory seems somewhat convincing; but when the situation is carefully analyzed, and the primary and ultimate purpose of the litigation considered, the fallacy of the claim becomes apparent.   The single purpose of the plaintiffs, as clearly outlined in the complaint, is to maintain the water in Fowler Lake at its accustomed level.   The defendants *Brown* and *Peacock* interfere with plaintiffs' right to have it so maintained by suffering the water to run over their waste channel and through their mill wheels to an extent that materially decreases the lake level.   At times, and inferably at the same time this is going on, the Schraudenbach heirs withhold the natural flow of the Oconomowoc river in Okauchee Lake, thus diminishing the water supply of Fowler Lake. The waterways company also obstructs the flow of the river, so as to further reduce the lake level.   Although acting independently, their concurrent acts result in injury to plaintiffs' property.   It is perfectly apparent from the complaint as a whole that the acts complained of as against the last-named defendants unite with and concur with the acts of *Brown* and *Peacock,* and together produce the result claimed.   It is true.

that the complaint says that the waterways company "has participated more or less in assisting to lower the waters of said Fowler Lake," and that the Schraudenbach heirs "have at·times" completely stopped the flow of water in the river. These allegations are not as definite as they might have been in showing the concurrence of the acts complained of. It is alleged, however, that *Brown* and *Peacock* are the owners of and are operating, and have for a long time past been operating, flouring mills·at the outlet mentioned. The inference fairly arises that such operation is continuous, so that the concurrence of the acts of the other defendants with those of *Brown* and *Peacock* reasonably appears. We then have the one primary right of the plaintiffs to have the water of Fowler Lake remain at its accustomed level. We have the corresponding duty of the defendants not to interfere with such right. We have also a wrongful violation of the plaintiffs' right by the defendants *Brown* and *Peacock* in unnecessarily drawing off the water, and the concurrent acts of the other defendants in withholding the natural and accustomed flow of water into the lake. Thus we find a single, complete cause of action, in which all of the defendants are interested, although acting independently and without concert.

It must be distinctly borne in mind that this is not an action to recover damages against the defendants. It is rather an action to restrain the commission of acts which result in a nuisance and consequent injury to plaintiffs' property. In a legal action to recover damages, as in *Lull v. Fox & Wis. Imp. Co.* 19 Wis. 100, the several defendants could not be joined, because each defendant could only be held responsible for the injury done by him. In such case the injury done by one defendant may be slight, and by the other great. The law only requires each to respond to the extent that he is guilty. It may seem somewhat anomalous that, under a Code, any distinction should exist between legal and equitable actions. That such distinction does exist is recognized in almost every Code

state. It is a distinction inherent in the very nature of things, and must be recognized so long as both legal and equitable remedies are permitted. A man has both legal and equitable rights. In the vindication of his legal rights he can only call upon the individual or individuals who have invaded such rights for reparation. In the enforcement of his equitable rights he has the power, and it is his duty, to call in every person necessary to a complete determination or settlement of the questions involved. Such is the statute. Sec. 2603, Stats. 1898. In treating this question, Mr. Justice LYON, in *Bonesteel v. Bonesteel*, 28 Wis. 245, wrote as follows:

"There are certain essential and inherent distinctions between actions at law and in equity, to abolish which is beyond the power of legislative enactment. The legislature may abolish the old forms of actions, and has done so; but the essential principles of equitable actions and equitable relief, as distinguished from legal actions and remedies, are as vital now, and as clearly marked and defined, as before the enactment of the Code. They are indestructible elements in our system of jurisprudence, and the courts are constantly required to recognize and apply them."

The courts of New York announced the same doctrine early in the history of the Code. *Reubens v. Joel*, 13 N. Y. 488; *Goulet v. Asseler*, 22 N. Y. 225; *Gould v. Cayuga Co. Nat. Bank*, 86 N. Y. 75–83. So pronounced and well-preserved is this distinction that this court sustained a demurrer to a complaint in an equitable action, notwithstanding it contained allegations which, if standing by themselves, would constitute an action at law. *Denner v. C., M. & St. P. R. Co.* 57 Wis. 218, 15 N. W. 158. The essential difference between legal and equitable actions has given rise to much discussion, and many diverse holdings may be found in the books when the question of multifariousness has been considered. That eminent writer, Joseph Story, treats the subject as follows:

"The conclusion to which a close survey of all of the authorities will conduct us seems to be that there is not any positive,

inflexible rule as to what, in the sense of courts of equity, constitutes multifariousness, which is fatal to the suit on' demurrer. These courts have always exercised a sound discretion in determining whether the subject-matters of the suit are properly joined, or not, and whether the parties, plaintiffs or defendants, are also properly joined or not. And it is not very easy, *a priori,* to say exactly what is or what ought to be the true line regulating the course of pleading on this point." [Story, Eq. Pl. § 539.]

See *Barnes v. Racine,* 4 Wis. 454; *Younkin v. Milwaukee L., H. & T. Co.* 112 Wis. 15, 87 N. W. 861. The reports are bristling with precedents of varying degrees of strictness, and it is a matter of no inconsiderable difficulty to discover a right of way through them.

One of the leading principles of equity is that, when a decision is made upon any particular subject-matter, the rights of all persons whose interests are immediately connected with that decision and affected by it shall be provided for as far as they reasonably may be. In the application of this rule it was held that "a complaint does not improperly unite several causes of action which relates to matters of the same nature, all connected with each other, and in which all the defendants are more or less interested or concerned, though their rights in respect to the general subject of the action may be different, and some may be directly interested only in a part of the general claim." *Blake v. Van Tilborg,* 21 Wis. 672; *Douglas Co. v. Walbridge,* 38 Wis. 179; *Ellis v. N. P. R. Co.* 77 Wis. 114, 45 N. W. 811; *Grady v. Maloso,* 92 Wis. 666, 66 N. W. 808. In *Ellis v. N. P. R. Co.,* the action was to quiet title. The railroad company claimed all the land, and the other defendants separate parcels from different sources. The claim was that the complaint was multifarious because the causes of action were separate and independent as against the several defendants. The rule above stated was appealed to, and the complaint sustained, because the primary object was to quiet the title to the property, and all persons interested in that con-

troversy were proper parties, to the end that their interests might be determined by one judgment. In *Grand Rapids W. P. Co. v. Bensley,* 75 Wis. 399, 44 N. W. 640, the complaint was held not multifarious. It was urged that plaintiffs were not united in interest, and that relief was sought because of injury to the land of one of the plaintiffs; but the court held that the primary subject of the action was a perpetual injunction against diverting the water, and that no damages were claimed to the freehold of the plaintiffs whose property had been entered upon. In *Putnam v. Sweet,* 2 Pin. 302, it was ruled that, where two separate and distinct parties are acting in the accomplishment of a measure injurious to others who have rights in the matter, though they may be acting separately and without concert to carry their plan into effect, all the parties so acting may be joined in a bill by the aggrieved party as defendants, and an objection by demurrer on account of such alleged misjoinder will not be sustained. *Younkin v. Milwaukee L., H. & T. Co.* 112 Wis. 15, 87 N. W. 861, quotes with approval the rule, stated in 2 Wood, Nuis. § 791, that "where several persons are injured by a common nuisance, although varying in degree, but having a common effect, they may join in a bill for an injunction, but there can be no recovery of damages." In that case the demurrer to the cause of action for damages was sustained, while the right to an injunction was upheld.

The supreme court of California carried the rule beyond limits in *Hillman v. Newington,* 57 Cal. 56. The plaintiff was entitled to the use of 400 inches of water flowing in a creek. The defendants severally diverted the water from the stream and materially diminished the flow. They did not act jointly or in concert, yet the court held they were proper parties defendant, and that damages might be recovered, and the cause of action therefor be joined with one to restrain the continuance of the diversion. The case was criticised and the

rule of the *Younkin Case* followed in *Miller v. Highland Ditch Co.* 87 Cal. 430, 25 Pac. 550. The court held that several tortfeasors, not acting in concert or by unity of design, are not liable to a joint action for damages, but that the suit might be maintained to restrain them from diverting water onto plaintiff's land, although in so doing they acted independently and without common design. See *People v. Gold Run D. & M. Co.* 66 Cal. 138, 4 Pac. 1152; *Geurkink v. Petaluma,* 112 Cal. 306, 44 Pac. 570. In *Blaisdell v. Stephens,* 14 Nev. 17, the plaintiffs brought an action to recover damages from defendants for wrongfully flowing waste water upon their premises and for an injunction. The defendants were acting each for himself in producing the injury to plaintiffs. The court denied the right to recover damages in such action, but sustained the right to an injunction.

In *Thorpe v. Brumfitt,* 8 Ch. App. 650, it was held that the acts of several persons may together constitute a nuisance, although acting independently of each other, which the court will restrain, though the damage occasioned by the acts of any one, if taken alone, would be inappreciable. *Blair v. Deakin,* 57 Law T. (N. S.) 522, follows the case last mentioned, and emphasizes the fact that it was no answer for a defendant to say that he was acting separately and independently of the others, and that the share he contributed to the nuisance was infinitesimal and unappreciable.

Cases might be multiplied sustaining the same doctrine, all going to show that the fact that the parties were acting without concert was no defense, if their acts contributed in some appreciable degree to produce the conditions sought to be repressed.

Counsel for appellants say with much confidence that the case of *Lull v. Fox & Wis. Imp. Co.* 19 Wis. 100, is decisive of this case. We do not so regard it. Suppose the plaintiff in that case, instead of bringing his suit to recover damages for the overflow of his land against the owners in severalty of

the two dams, had brought his suit in equity to restrain a further overflow, is there any question but that he might have made both dam owners defendants? In that case the primary subject of his action would have been a prevention of the wrong which the conjoint acts of the defendants produced; one, perhaps, contributing in a greater or less degree than the other. Could one defendant be held to say that, but for the other's dam, there would be no overflow? Most certainly not. No more could he be heard to say that he was acting by himself, and that his act alone did not produce the injury. In the case at bar, how futile would be the suit against *Brown* and *Peacock,* if the other defendants might obstruct or withhold the water from the lake at pleasure. The plaintiffs were entitled to the natural flow of the river. The defendants *Brown* and *Peacock* were entitled to the natural flow, provided they did not unreasonably lower the artificial level of the lake. The other defendants had no right to obstruct or withhold such flow. The relations of the parties, so far as the ultimate purpose of the action is concerned, are so interdependent and closely connected that one action can best determine their rights, and one judgment protect their interests.

*By the Court.*—Order affirmed.