The judgment below must therefore be *affirmed.*

---

WM. TACKABERRY COMPANY, Appellant, v. SIOUX CITY SERVICE COMPANY, CITY OF SIOUX CITY, CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY, GREAT NORTHERN RAILWAY COMPANY, CHICAGO & NORTH-WESTERN RAILWAY COMPANY, SIMMONS HARDWARE· COMPANY, THOMAS KING, R. B. MARTIN, G. E. G. WILLIAMS, LIBBIE A. MAGOUN, CHARLES R. KLATT, SIOUX CITY BREWING COMPANY, and CONSUMERS ICE COMPANY, Appellees.

**Nuisance:** OBSTRUCTION OF STREAM: SEVERAL WRONGDOERS: SEPARATE LIABILITY: DAMAGES. Where the obstruction of a stream is brought about by the separate, independent and nonconcerted action of several parties, they can not be sued jointly for injury resulting from the combined consequence of their several acts, but each is liable only for his own wrong. And in the prosecution of separate actions the injured party is not required to prove the precise damage inflicted by each, but may show the proportionate extent to which the particular defendant contributed to the injury, and the jury may award such proportion of the damage. Weaver, J., dissenting.

**Pleadings:** MISJOINDER OF CAUSES. Allegations setting up several

2 causes of action against one defendant can not be joined with another cause of action against the same and another defendant.

*Appeal from Woodbury District Court.*—HON. JOHN F. OLIVER, Judge.

THURSDAY, OCTOBER 26, 1911.

THIS is an action for damages against eighteen defendants for unlawfully obstructing a stream, and thereby causing plaintiff's premises to be flooded to his injury. Several defendants filed motions, wherein each asked that the alleged cause of action as to him be separated from that charged against the other defendants, on the ground that the plaintiff had improperly joined causes of action, and had improperly joined such moving party as a joint defendant with the other defendants. These motions were sustained, and the plaintiff appeals.—*Affirmed.*

*M. L. Sears* and *Edwin J. Stason,* for appellant.

*J. L. Kennedy, J. P. Shoup, F. W. Sargent, Shull, Farnsworth & Sammis, F. E. Gill, J. C. Davis, Wright & Sargent, Ferris & Iddings, Lewis S. Haslam, Henderson & Fribourg, E. A. Burgess, C. K. Williams, Geo. A. Bliven,* and *Geo. M. Pardoe,* for appellees.

EVANS, J.—The petition is lengthy, and we will not set it out verbatim. The following statement from appellant's argument is a sufficient abstract thereof:

The action is one at law, brought by the plaintiff to recover damages sustained by it on account of the flooding of the basement of its wholesale house, filled with perishable goods, the flood water coming from Perry creek, which it is alleged, overflowed its banks because of obstructions placed in it by the defendants. The plaintiff alleges in its petition that Perry creek is a natural water course, which

has its source a considerable distance north of Sioux City, and flows in a regular well-defined channel through a thickly settled portion of the residence and business section of the city. The stream as it passes through the city has a channel of from fifty to one hundred feet in width, with well-defined banks from fifteen to twenty feet in height. The plaintiff's wholesale house is in the wholesale and retail business district of the city, and about five hundred feet west of the creek, near where it empties into the Missouri river, and from seven hundred to one thousand from, and below, the obstructions complained of.

Prior to the 10th day of July, 1909, the defendant city constructed and still maintains a large iron bridge across Perry creek, at the junction of what is known as Fourth and West Third streets, constructed so low and short as to materially lessen the capacity of the stream and materially prevent the waters from passing under the bridge, and in connection therewith constructed and maintained a closed cement apron to the south of the bridge, and joined with it in such manner as to prevent overflow water from flowing back into the channel of the stream; and prior to the said date the defendant Simmons Warehouse Company, without warrant or authority of law, and in violation of the statutes of Iowa, had constructed and was maintaining over the said Perry creek, and in the bed, bottom, and banks thereof, a solid piece of masonry, known as a cement conduit, . . . of a size and capacity materially less than the size and capacity of the stream; that the said Simmons Warehouse Company, also in connection with the said conduit, and without warrant or authority of law, and in violation of the statutes of Iowa, constructed and was maintaining a solid cement apron from the top of the said conduit to the south edge of the bridge constructed by the city of Sioux City and heretofore referred to; that the said cement apron was so constructed that water to the south of the said bridge could not again enter the bed of said Perry creek, but was forced out of and away from the bed of said stream and upon public and private property; that the said iron bridge . . . and the apron and conduit aforesaid were constructed under the supervision and co-operation of the defendant Simmons Warehouse Company and the defendant city of Sioux City, and has been so main-

tained and kept to the present time. Prior to the said date, the defendants, Sioux City Service Company, the Chicago, Milwaukee & St. Paul Railway Company, Chicago & Northwestern Railway Company, Great Northern Railway Company, and city of Sioux City, had each built and were maintaining pile bridges in and over said creek at points both to the north and south of plaintiff's place of business, and in building and maintaining the said bridges they had driven several hundred large piles in the banks and bed of the stream, and had built piers therein, and each is still maintaining the said bridges, piles and piers. Prior to the said date, the other defendants had each constructed buildings between Fourth and Fifth streets on the banks and bed of the creek, and in the construction thereof they had deposited large quantities of rock, stone, and cement adjacent to their buildings, thus lessening the carrying capacity of the stream.

The plaintiff alleges that the said bridges, buildings, and other structures were so improperly, unskillfully, and negligently constructed and placed in the channel of the creek that no adequate space was left for the free and unobstructed passage of the water, and that through the narrowing and restricting of the channel of the creek in this manner, and by the catching and lodgment of great quantities of debris and drift by the piles, piers, girders, walls, and projections of said bridges, conduit, buildings, and other structures, caused the overflow of the waters of the creek and the flooding of the plaintiff's premises. The plaintiff further alleges in its petition that, had the stream been kept free from obstructions, its waters would have remained in the channel of the stream, and would have flowed into the Missouri river without damage to the plaintiff; that the defendants knew or should have known of the obstructions which were being placed in the stream, and maintained there, and that they would render the carrying capacity of the creek insufficient; that they would divert the waters of the stream, and cause it to overflow, to the injury of the plaintiff and others; that the construction and maintenance of the said obstructions constituted an unlawful obstruction of the creek, and the obstructions united in their effect and results, and caused the diversion of the waters of the creek, and constituted a public and common nuisance, in violation of both public and private rights; and that the defendants,

by the exercise of reasonable care and diligence, should have known that the structures would combine and unite in obstructing the stream, and would constitute a public nuisance in violation of both public and private rights. By the flooding of the plaintiff's premises, it was damaged, so it alleges, in the sum of $20,000, for which it demands judgment, and that the obstruction maintained by the defendants, and each of them, be adjudged to constitute nuisances, and an order be made directing the abatement thereof.

The principal question presented under the motions of the moving defendants is whether, upon the showing of the petition, a *joint* liability of the defendants is made to appear. If the facts pleaded show only a several liability, and not a joint liability, then the motions were properly sustained. The appellant contends for the application of the rule

1. NUISANCE: obstruction of stream: several wrongdoers: separate liability: damages.

that, where an injury is caused to a third person by the concurring wrongful acts of others, each and all such wrongdoers are severally and jointly liable for the injury thus inflicted. As to the general statement of this rule, there is no difficulty. All authorities concur in it. But in the application of this rule to the concrete case difficulty has often been encountered, and diversity of opinion has arisen. Such is the form of the controversy here. It is not claimed in the petition that there was any concert of action in the erection of the alleged nuisances by the defendants, nor that there was any concurrence of action in either place or time. Some of the defendants built bridges across the stream at different points thereon. Others built structures upon its banks, and encroached upon its capacity. But each acted independently and for himself alone. Because of the lack of concert, appellees contend that each is liable only for his own wrong, and the consequences thereof. The appellant contends that the rule referred to may apply, even though there be no prior concert of action. A familiar illustration of such an application is a case wherein a collision may occur between trains owned and operated

independently, and as a result of the independent and separate negligence of the persons in control of the respective trains. In such a case, both parties are held liable for the injuries resulting from the collision. Again, the application of the rule has been denied in many cases where concurring negligences have contributed to an injury without concert of action on the part of the wrongdoers. The most frequent illustration of this holding is to be found in cases of nuisance, wherein different parties have independently contributed to the pollution of the atmosphere or to the pollution of a stream by sewage, or otherwise, or to the obstruction of a stream.

Appellant introduces the discussion at this point with the following quotation from Cooley on Torts, page (star) 153:

Where several persons unite in an act which constitutes a wrong to another, intending at the time to commit it, or doing it under circumstances which fairly charge them with *intending the consequences* which follow, it is a very reasonable and just rule of law which compels each to assume and bear the responsibility of the misconduct of all. To require the party injured to ascertain and point out how much of the injury was done by one person and how much by another, or what share of responsibility is fairly attributable to each as between themselves, and to leave this to be apportioned among them by the jury according to the mischief found to have been done by each, would, in many cases, be equivalent to a practical denial of justice. The law does not require this, but, on the other hand, permits the party injured to treat all concerned in the injury as constituting together one party, by their joint co-operation accomplishing certain injurious results, and liable to respond to him in a gross sum as damages.

As against this, the appellees quote the same authority (3d Ed.) p. 250:

But, where different proprietors on a stream, each acting independently and for his own purposes, conduct filth or refuse into the stream from their respective estates, they

are held not to be jointly liable. So where several proprietors drain their premises into the same ditch or waterway, and the combined waters flood or otherwise damage a lower proprietor. But it would be otherwise, if there was some concert of action, as if they joined in constructing or maintaining the ditch. The same rule applies to the pollution of the atmosphere as to the pollution of a stream. And where different factories or works, owned and carried on by different proprietors, each discharge volumes of smoke and gases into the atmosphere, which mingle and spread over the surrounding territory, injuring vegetation and affecting the health and comfort of those who live in the vicinity, each proprietor is liable only for the proportion of the damage caused by him, and not jointly and severally for the entire damage.

Our own cases are committed to the doctrine that a party who wrongfully pollutes the atmosphere, or who so pollutes a stream, is liable for the extent of the injury caused by his wrongful act, and that he is not *jointly* liable with other parties, who, acting independently, may also be guilty at the same time of the same kind of pollution. *Loughran v. City of Des Moines,* 72 Iowa, 382; *Harley v. Merrill Brick Co.,* 83 Iowa, 73; *Bowman v. Humphrey,* 124 Iowa, 744; Id., 132 Iowa, 234.

In the *Bowman* case last cited, it is said:

Now, while the doctrine here stated is undoubtedly correct as applied to an appropriate state of facts, it is not difficult to see that it is misapplied under circumstances such as are here presented. Joint liability of wrongdoers, each for all and all for each, exists only where the wrong itself is joint. If the separate wrongful acts of two or more persons, acting independently, without concent, plan, or agreement, unite to cause injury to another, such persons are not joint wrongdoers within the meaning of the law, and each is liable to the injured party for only so much of said injury as is chargeable to his own separate individual act. *Bonte v. Postel,* 109 Ky. 64, (58 S. W. 536, 51 L. R. A. 187); *Sparkman v. Swift,* 81 Ala. 231 (8 South. 160); *Bard v. Yohn,* 26 Pa. 482; *La France v.*

*Krayer*, 42 Iowa, 143; *Harley v. Merrill,* 83 Iowa, 79; *De Donato v. Morrison,* 160 Mo. 581, (61 S. W. 641); *Little Schuylkill Navigation R. & Coal Co. v. Richards*, 57 Pa. 142, (98 Am. Dec. 209); *Wiest v. Electric Traction Co.,* 200 Pa. 148, (49 Atl. 891, 58 L. R. A. 666); *Lull v. Improvement Co.,* 19 Wis. 101. As suggested by the Pennsylvania court, if the tort of the parties was several when committed, it did not become joint because of the union of the consequences of the several torts in producing an injury. *Wiest v. Electric Traction Co., supra; Gallagher v. Kemmerer,* 144 Pa. 509, (22 Atl 970, 27 Am. St. Rep. 673).

In the *Harley* case, *supra,* it is said:

It is well settled that each person who acts in maintaining a nuisance is liable for the resulting damage. If he act independently and not in concert with others, he is liable for the damages which result from his own act only. *Loughran v. City of Des Moines,* 72 Iowa, 386; *Ferguson v. Manufacturing Co.,* 77 Iowa, 578; *Sloggy v. Dilworth,* 38 Minn. 179, (36 N. W. 451, 8 Am. St. Rep. 656); *Sellick v. Hall,* 47 Conn., 273; *Evans v. Railway Co.,* 96 N. C. 45, (1 S. E. 529); 3 Sutherland on Damages, 425; 1 Addison on Torts, 364; Gould on Waters, sections 222, 398; Wood on Nuisances, section 831. And the fact that it is difficult to measure accurately the damage which was caused by the wrongful act of each contributor to the aggregate result does not affect the rule, nor make any one liable for the acts of others. *Chipman v. Palmer,* 77 N. Y. 53, (33 Am. Rep. 566); *Lull v. Improvement Co.,* 19 Wis. 101. It is said that a different rule applies to smoke than to other nuisances, for the reason that it is much more common, and in many cities not to be avoided. We know of no reason why the rule under consideration should not be applied to all nuisances, whether due to smoke, smell, water, gas, noise, or other of the common sources of nuisance. See 2 Thompson on Trials, section 1899; *Crump v. Lambert,* L. R. 3 Eq. 412.

In the *Loughran* case, *supra,* it was said:

It was surely the right of the defendant to show that the damages to the · plaintiff resulted from other causes

than that upon which he founded his action; and it was competent for the city to show that the sewer was not the cause of all the damages complained of, and thus mitigate the damages complained of in the action.    If several persons drain their premises into the same ditch, the waters of which are discharged near the premises of another, and produce an injury, either to his estate or to its comfortable enjoyment, each of the persons so using the drain is liable for the damage occasioned by his act; but he is not liable for the damage caused by others.    *Chipman v. Palmer,* 9 Hun (N. Y.) 517; *Keyes v. Little York Gold Co.,* 53 Cal. 724.

No cases are cited to us which run counter to the above, except certain Indiana cases and one case from West Virginia, viz.: *South Bend Mfg. Co. v. Liphart,* 12 Ind. App. 185, (39 N. E. 908); *Valparaiso v. Moffitt,* 12 Ind. App. 250, (39 N. E. 909, 54 Am. St. Rep. 522); *West Muncie Strawboard Co. v. Slack,* 164 Ind. 21, (72 N. E. 879); *Day v. Louisville Co.,* 60 W. Va. 27, (53 S. E. 776, 10 L. R. A. (N. S.) 167).    Reference will be made to these cases later herein.    Other cases are cited by appellant, but they bear only remotely upon the precise question here involved.

In *Irvine v. Wood,* 51 N. Y. 224 (10 Am. Rep. 603), the action was for damages for injuries which resulted to plaintiff from falling into a coalhole in the sidewalk.    It was held that both the landlord and the tenant in possession were responsible for the nuisance, and were jointly liable to the plaintiff for his injuries.

In *Slater v. Mersereau,* 64 N. Y. 138, the contractor and his subcontractor, while at work upon a building, each separately allowed water to run in such a way as to injure a neighboring building.    In a suit against the contractor alone, he was held liable for the entire damage.

In *Simmons v. Everson,* 124 N. Y. 319, (26 N. E. 911, 21 Am. St. Rep. 676), three defendants were held jointly liable for damages for the killing of a pedestrian

upon the sidewalk, by reason of the falling of a wall upon him. The defendants, Lloyd, Pierce, and Everson, were the several owners of three adjoining and parallel lots upon which a building was constructed, constituting three separate storerooms; each being twenty-two feet wide. One continuous front wall was made for the three stores, and the partition walls were joined thereto. After a fire which destroyed the rest of the structure, this front wall was left standing. It was in a damaged condition, and was leaning toward the street. Its construction and condition were such that the falling of a part thereof would naturally carry down the rest of it. At the time of its final collapse, it first gave way at the partition line between Lloyd and Pierce, and the whole wall thereupon fell. That part of the wall opposite the lots of Pierce and Everson fell upon the decedent. No part of the material of Lloyd's part of the wall fell upon the decedent. It was held that the relations of the three defendants to the wall in question were such as to render them each and all responsible for its condition as a nuisance, and that they were jointly liable for the injury.

In *Bryant v. Bigelow Carpet Co.*, 131 Mass. 491, there was a claim of concert of action between the two defendants. There was no claim of joint liability, independent of such alleged concert of action. The same is true of *Consolidated Ice Co. v. Keifer*, 134 Ill. 481, (25 N. E. 799, 10 L. R. A. 698, 23 Am. St. Rep. 688).

In *Coleman v. Bennett*, 111 Tenn. 705, (69 S. W. 734), there was only one defendant in the case. He was charged in the petition to have collected surface water and cast the same upon plaintiff's land. It was held that he was liable for damages, even though a levee built by a third person was instrumental in preventing the escape of the water from plaintiff's land. Cases are also cited by appellant, wherein parties were held jointly liable for damages caused by their racing of horses in the street.

*Cuddy v. Horn*, 46 Mich. 596, (10 N. W. 32, 41 Am. Rep. 178), was an action for damages resulting from a collision between two steamboats. The collision occurred as a result of negligence in the management of each boat. It was held that there was a joint liability.

*McClellan v. St. Paul R. R. Co.*, 58 Minn. 104, (59 N. W. 978), was a fire case. There was but one defendant, and it was held liable. The origin of the fire was in dispute as to whether it resulted from a fire set out by the defendant, or from one set out by a third party. In the discussion of the case, it was said, in effect, that the commingling of the defendant's fire, if any, with that set out by another did not relieve the defendant from liability. This we understand to be the general holding on the question of commingling fires.

*Kansas City v. Slangstrom*, 53 Kan. 431 (36 Pac. 706), was an action against the city alone, wherein the question of joint liability was not directly involved. The defense was that the damage was caused by a third party. This defense was overruled. It was said in the opinion that upon the facts shown both parties would be liable.

*Klauder v. McGrath*, 35 Pa. 128, (78 Am. Dec. 329), was an action for damages for injuries resulting from the falling of a party wall. Both owners were held to be jointly liable.

The foregoing indicates the general nature of the authorities relied upon by appellant in support of its contention. As against this, the following authorites outside of our own are directly in point and clearly adverse to appellant's contention: *Little Schuylkill, etc., Co. v. Richards*, 57 Pa. 142, (98 Am. Dec. 209); *Gallagher v. Kemmerer*, 144 Pa. 509, (22 Atl. 970, 27 Am. St. Rep. 673); *Ames v. Dorset Marble Co.*, 64 Vt. 10, (23 Atl. 857); *Chipman v. Palmer*, 77 N. Y. 51, (33 Am. Rep. 566); *Swain v. Tennessee Copper Co.*, 111 Tenn. 430, (78 S. W. 93); *Watson v. Colusa-Parrot Mining, etc., Co.*, 31 Mont. 513,

(79 Pac. 14); *Miller v. Highland Ditch Co.*, 87 Cal. 430, (25 Pac. 550, 22 Am. St. Rep. 254); *Mansfield v. Bristor*, 76 Ohio St. 270, (81 N. E. 631, 10 L. R. A. (N. S.) 806, 118 Am. St. Rep. 852); *Martinowsky v. Hannibal*, 35 Mo. App. 70; *Sloggy v. Dilworth*, 38 Minn. 179, (36 N. W. 451, 8 Am. St. Rep. 656); *Lull v. Fox & Wisconsin Improvement Co.*, 19 Wis. 100.

The general reason which underlies the holding in these various cases is indicated in the following excerpts:

*Chipman v. Palmer*, 77 N. Y. 51 (33 Am. Rep. 566), involved the pollutions of a stream. From the opinion, we quote the following:

The defendants' acts, being several when committed, can not be made joint, because of the consequences which followed in connection with others who had done the same or a similar act. It is true that it is difficult to separate the injury, but that furnishes no reason why one tort-feasor should be liable for the act of others, who have no association, and do not act in concert with him. If the law was otherwise, the one who did the least might be made liable for the damages of others far exceeding the amount for which he was really chargeable, without any means to enforce contribution, or to adjust the amount among the different parties; so, also, proof of an act by one person would entitle plaintiff to recover for all the damages sustained by the acts of others, who severally and independently may have contributed to the injury. Such a rule can not be upheld upon any sound principle of law. The authorities relied on to sustain such a doctrine come far short of establishing any such rule, and have no application. (Citing cases.) Each of the cases cited was disposed of on a different principle. They merely hold that, where a direct personal injury is occasioned by the separate and concurring negligence of two parties at one and the same time, an action against one or all of them will lie. The distinction is plain. The case of *Slater v. Mersereau*, 64 N. Y. 138, in no way upholds the doctrine contended for by plaintiff's counsel, and is not in point. While, as we have seen, an equitable action will lie to restrain parties who severally

contributed to a nuisance, the general rule is well settled that, where different parties are engaged in polluting or obstructing a stream at different times and places, the whole damage can not be collected of one of the parties.

The *Ames* case, *supra,* was an action for damages for obstructing a stream, which resulted in the flooding of plaintiff's meadow. We quote the following from the opinion: "Each defendant is liable in damages in proportion only as its wrongful acts have contributed to obstructing the flow of water and setting it back upon the orator's meadow. The defendants are not joint wrongdoers in the sense that they join in doing the same wrongful act, but only in the sense that their several wrongful acts combine in causing damage to orator's meadow. This does not make them jointly tort-feasors in the sense that each is liable for all the damages to orator's meadow."

*Lull v. Fox, supra,* was a case of obstructing a stream. We quote the following from the opinion:

Here are two distinct causes of action set out; one against the corporation defendant; the other against the other defendants. There is no allegation that all the defendants acted together in erecting or maintaining either or both of these dams; on the contrary, it is alleged they acted separately; each dam was erected and has been maintained by a part of the defendants without the aid or even approval of the others. We are at a loss to perceive how, by the well-established rules of pleading, these causes of action can be united. It is argued that the result of the separate acts of the defendants in erecting and maintaining the dams is a joint result, the same as if all the defendants had been engaged in erecting and maintaining both dams. If it were so, it does not follow that the defendant or defendants who alone erected and maintained one dam, without any concert of action or connection with the defendant or defendants erecting and maintaining the other dam, should be held liable to pay the damages occasioned by erecting and maintaining both. The argument that there is difficulty in ascertaining the damage done or caused by the

erection of each dam, or that it is impossible, is certainly no reason why one defendant should pay for the damages caused by another, with whom he is in no way connected. In fact, if this action can be maintained jointly against all the defendants, then each defendant is separately liable in a separate action for all the damages occasioned by the erection of both dams.

From *Little Schuylkill v. Richards,* 57 Pa. 142, (98 Am. Dec. 209), *supra,* we quote the following from the opinion:

The substance of the charge and answers to points was that, if at the time the defendants were engaged in throwing the coal dirt into the river, about ten miles above the dam, the same thing was being done at other collieries, and the defendants knew of this, they were liable for the combined result of all series of deposits of dirt from the mines above from 1851 to 1858. . . . But the fallacy lies in the assumption that the deposit of the dirt by the stream is the basis of the foundation of liability. It is the immediate cause of the injury; but the ground of the action is the negligent act above. The right of action arises upon the act of throwing the dirt into the stream; this is the tort, while the deposit below is only a consequence. The liability, therefore, began above with the defendant's act upon his own land, and this act was wholly separate and independent of all concert with others. His tort was several when it was committed, and it is difficult to see how it afterwards became joint, because its consequences united with other consequences. The union of consequences did not increase his injury. If the dirt was deposited mountain high by the stream, his dirt filled only its own space and it was made neither more nor less by the accretions. But the difficulty of separating the injury of each from the others would be no reason that one man should be held to be liable for the torts of others without concert. It would be simply to say, because the plaintiff fails to prove the injury one man does him, he may therefore recover from that one all the injury that others do. This is bad logic and hard law. Without concert of action, no joint suit could be brought against the owners of all the collieries, and

clearly this must be test; for, if the defendants can be held liable for the acts of all the others, so each and every owner can be made liable for all the rest, and the action must be joint and several. But the moment we should find them jointly sued, then the want of concert and the several liability of each would be apparent.

Reference has already been made to the cases in Indiana and West Virginia. The first cited of the Indiana cases, *supra*, involved damages for a washout, caused by the alleged negligence of two adjoining owners of flumes connected to the same millrace. The other two cases involved the pollution of streams by the independent acts of various parties, not acting in concert. The holding in all these cases is very sweeping in favor of the theory of joint liability in all such cases. The only authorities relied upon for such holdings are the cases of *Irvine v. Wood supra, and Simmons v. Everson, supra,* both of which cases we have already stated. Neither of such cited cases involved the question of polluting or obstructing a stream.

The following quotation from the *West Muncie* case, *supra,* being the latest of the cited Indiana cases, is illustrative of the real state of the authorities on the question now under consideration:

Objection is made by the appellants that the acts alleged, if done at all, were performed severally and independently by them; and hence there can be no joint liability therefor. It is probably true that an action at law for the recovery of money damages, as distinguished from a suit in equity, can not be maintained jointly against various tort-feasors among whom there is no concert or unity of action and no common design, but whose independent acts unite in their consequences to produce the damage in question. *Miller v. Highland Ditch Co.,* 87 Cal. 430, (25 Pac. 550, 22 Am. St. Rep. 254); *Lockwood Co. v. Lawrence,* 77 Me. 297, (52 Am. Rep. 763); *Sloggy v. Dilworth,* 38 Minn. 179, (36 N. W. 451, 8 Am. St. Rep. 656); *Martinowsky v. City of Hannibal,* 35 Mo. App. 70; *Chipman v. Palmer,* 77 N. Y. 51, (33 Am. Rep. 566); *Blaisdell v.*

*Stephens,* 14 Nev. 17, (33 Am. Rep. 523); *Long v. Swindell,* 77 N. C. 176; *Little Schuylkill Co. v. Richards' Adm'r,* 57 Pa. 142, (98 Am. Dec. 209); *Draper v. Brown,* (1902) 115 Wis. 361, (91 N. W. 1001); *Debris Case* (C. C.) 16 Fed. 25. And see *Sellick v. Hall,* 47 Conn. 260. A distinction, however, is recognized between such acts which are wrongful only because injurious to individual rights, and those which combine and constitute a public nuisance. *Simmons v. Everson,* 124 N. Y. 319, (26 N. E. 911, 21 Am. St. Rep: 676); *Irvine v. Wood,* 51 N. Y. 224, (10 Am. Rep. 603); *City of Valparaiso v. Moffitt,* 12 Ind. App. 250, 255, (39 N. E. 909, 54 Am. St. Rep. 522). In the former class of cases, each separate wrongdoer is chargeable with his own acts alone, in the absence of a joint purpose among the participants; in the latter, each may be answerable in a joint and several action, not only for what he himself does, but likewise for the acts of those who, with him, violate public, as well as private, rights.

More confusion has been put into this question by passing dictum of the courts, in cases where the question was not directly involved, than by actual conflict of decision. The text-books, too, have been responsible for some inaccuracies of statement, and have been criticised by the courts in some adjudicated cases already cited. It is to be noticed that the Indiana court cites no authorities in support of the doctrine which it announces, except its own previous holdings and the two New York cases referred to.

The Supreme Court of Ohio, in the recent case of *Mansfield v. Bristor,* 76 Ohio St. 270, (81 N. E. 631, 10 L. R. A. (N. S.) 806, 118 Am. St. Rep. 852), commenting upon this case said: "The distinction suggested in *West Muncie Co. v. Slack,* 164 Ind. 21, (72 N. E. 879), has no foundation in precedent, and is not believed to be maintainable on principle. The distinction assumes that several torts have been committed, but holds the perpetrator of one liable for the damage from all, on the sole ground that his act is a public wrong."

Some stress is laid by appellant upon the *Slater* case,

*supra,* to which we have already referred. That case bears some analogy to the case at bar; and is properly urged upon us by the appellant. Nevertheless the opinion in that case was written by the same judge who wrote the opinion in the later case of *Chipman v. Palmer,* 77 N. Y. 33, *supra,* from which we have already quoted. It will appear from the latter case that the New York court refused to construe the *Slater* case as authority to the proposition to which it is now urged by appellant. At this point, the appellant is in the position of relying upon New York precedents to establish, by analogy, a proposition which runs counter to the pronouncement of that court in the *Chipman* case.

Appellant's brief contains a suggestion that there is a distinction between pollution cases and those cases which involve the obstruction of streams. This suggestion was accompanied by the concession in oral argument that practically all the pollution cases were against the theory of joint liability in the absence of concerted action. No authority is cited to us, wherein any distinction has ever been recognized between the nature of the liability for polluting a stream and that for *obstructing* it. We have already quoted herein from our own cases, wherein it is distinctly stated that there is no distinction in such cases, and such seems to be the holding, either expressly or by implication, in all the cases which have been cited for our attention. In this respect, the Indiana cases are in harmony with our own. The first two cases cited from the Indiana court, *supra,* were both decided at the same term; the opinions therein being written by the same judge. The first was an action for damages resulting from a washout, and the second was an action for damages for *polluting* a stream by sewage. That court applied to both cases the same rule of joint liability. The ground of the holding in the Indiana cases was, not that there was any distinction between polluting a stream and obstructing it; it was that the act complained of was a *public nuisance,* and that such fact alone

rendered all persons contributing thereto jointly liable for all damages, regardless of whether they were joint tort-feasors or not. This is the doctrine upon which the Indiana court seems to stand alone up to this point. This doctrine would overrule practically all the holdings of other courts in the pollution cases. Practically all such cases involved public nuisances. We agree with the Ohio court that the doctrine thus announced is not tenable. (It may be noted here parenthetically that the Indiana court has adopted a rule counter to that obtaining in this state as to damages done by trespassing animals. In this state it is the rule that the separate owners of trespassing cattle are not jointly liable for the damages done by all. *Cogswell v. Murphy,* 46 Iowa, 44. In Indiana the contrary rule prevails. *Brady v. Ball,* 14 Ind. 317.)

In a recent English case (*Sadler v. G. W. R. R. Co.,* 2 Q. B. 688), a question was involved which bears some analogy to the question before us. The plaintiff was a dealer in cycles, and had a place of business between the separate offices of two railroad companies. He brought an action against both companies, alleging a joint liability against them for obstructing the highway in front of his office, in that each company caused carts to stand upon the highway for an unreasonable length of time, and that by their combined acts they prevented access to the plaintiff's shop. We quote as follows from the opinion of the court:

He is trying to sue as codefendants two independent, separate alleged tort-feasors, neither of whom has any control or power over the acts of the other tort-feasor. He is trying to sue them jointly in one action. . . . In my opinion, these two torts, if they are torts, are independent torts by the different companies, although as I have already stated, the acts of each company can be taken into account, in considering the acts of one company and deciding whether they amount to a nuisance or not. The acts of the other company must be taken into account, because it may be

that the one company ought not to be doing what it was when the other company was doing what it did. But that does not make these two causes of action a joint cause of action, or give any right to join one company with the other in one action.

We quote from Pollock on Torts (2d Ed.) p. 406, as follows:

'A cause of action for nuisance may be created by independent acts of different persons, though the acts of one only of those persons would not amount to a nuisance. Suppose one person leaves a wheelbarrow standing on a way; that may cause no appreciable inconvenience; but, if 100 do so, that may cause a serious inconvenience, which a person entitled to the use of the way has a right to prevent; and it is no defense to any one person among the 100 to say that what he does causes of itself no damage to the complainant. But this does not mean that a plaintiff may make two or more independent wrongdoers codefendants in a single action for damages, whatever may be the rule where only an injunction is claimed.

The case of *Day v. Louisville Co., supra,* being the West Virginia case to which we have already referred, was one wherein a hydraulic mining company cast into a stream the debris or tailings from its mill, and such debris was cast upon plaintiff's land further down the stream. A similar course was followed by other mining companies at different points of the stream. There was no claim of concert of action. The defendant was held liable for all the damages as a joint tort-feasor. This case stands alone on this particular question, and is contrary to the holding in other states. The authorities cited in the opinion consist principally of general statements quoted from the text-books and encyclopedias. To our minds, the reasoning of the learned court in that opinion is not persuasive, nor do the authorities cited therein justify the conclusion reached. The text-book quotations therein simply consist of a statement of the general rule concerning liability for concurring neg-

ligence, to which general rule we have already adverted herein.

We think that it must be said, therefore, that the greater weight of the authorities is against the appellants in the case at bar. The question involved is one upon which it is difficult to formulate a general rule, which shall govern all cases. None of the courts have attempted to formulate such general rule, so far as we can discover. Perhaps it can safely be said that, where the nuisance which is contributed to by independent wrongdoers is such that such contribution will tend to increase the extent or magnitude of the injury naturally resulting therefrom, then the liability of the independent contributor should be deemed several, and not joint, and each wrongdoer should be held to pay such proportionate part of the damages as was caused by his own contribution.

The rule of joint liability has been contended for in some cases, on the ground that it would be impossible for plaintiff to prove the precise damage caused by each separate contributor to his injury, and that the rule of several liability would therefore result in a denial of justice to plaintiff. On the other hand, such rule of joint liability has been resisted, on the ground that it makes it possible for a plaintiff to overwhelm a defendant with a claim for damages out of all proportion to his wrongdoing; and that, even though such defendant may have contributed only slightly to the nuisance, he might be held liable for the greater wrongs committed by others, over which he had no control. In those jurisdictions where the rule of several liability in such cases is adhered to, the rule of measure of damages is tempered to the circumstances. The plaintiff is not required to prove the *precise* damage inflicted upon him by the single defendant. He may prove the proportionate extent to which the defendant contributed to his injury, and the jury may award such proportion of the damage as is commensurate with the defendant's contribution thereto. This results in

practical justice, both to the plaintiff and to the defendant; whereas the other rule may be highly penal in its result; and the most innocent of the wrongdoers may, at the mere will of the plaintiff, be held for all of the damage, without right of contribution against the principal perpetrators of the injury. The foregoing disposes of the principal and most persuasive points in appellant's argument. Other points are made which do not seem to us well taken.

It is our conclusion that the ruling of the lower court was right, and it is accordingly *affirmed.*

WEAVER, J.—I dissent from the conclusion above announced and from the argument by which it is supported. In my judgment, there is a marked distinction to be observed between rights of action which involve the conflicting rights and interests of riparian owners and rights of action by a nonriparian owner against those who interfere with the natural flow of the stream, and by union of the forces thus wrongfully set in motion inflict injury upon nonriparian property. Moreover, as a matter of general principle, parties who obstruct the stream should be held to intend the natural consequences of their acts, and if A obstructs it at one place, B at another, and C at still another, each knowing, as he is bound to know, that the united effect of their several acts will work to the material injury of property exposed to overflow, it is certainly a somewhat surprising illustration of the inefficiency of the law if there be no union of liability on the part of the wrongdoers, and he whose property is thus flooded must assume the burden of showing what particular fraction of his loss is traceable to each obstruction, even though, but for the existence of all, no damage would have been done. In so holding, it seems to me we are sacrificing substantial right to empty forms.

SUPPLEMENTAL OPINION. ON REHEARING.

THURSDAY, MARCH 14, 1912.

EVANS, J.—Plaintiff urges upon our attention paragraph 29 of the petition, and contends that a joint liability is charged therein as against the two defendants, Simmons Warehouse Company and the city of Sioux City. Such paragraph is as follows: "(29) That the said iron bridge at the junction of Fourth and West Third streets across Perry creek and the apron and conduit aforesaid were constructed under the supervision and co-operation of the defendant, Simmons Warehouse Company, and the defendant, city of Sioux City, and has been so maintained and kept to the present time."

2. PLEADINGS: misjoinder of causes.

At the original submission of the case, it did not appear from the printed record before us that this paragraph was involved in the appeal. All the parties have now stipulated that this omission was an inadvertence, and they join in a proposed correction and ask that the appellant's exception at this point be considered. We think that this paragraph does in terms charge, somewhat imperfectly, a joint liability against the two defendants. The difficulty with appellant's position, however, is that this alleged joint cause of action is improperly joined with other alleged causes of action against the same defendants, which are not joint, but several. For instance, paragraph 26 charges a several liability against the city of Sioux City for the construction of various bridges at different points on the stream. Other allegations charge a several liability against the defendant Simmons Warehouse Company.

If a plaintiff chooses to declare upon a cause of action upon which a defendant is only severally liable, he can not join another defendant by merely alleging a further joint cause of action against both such defendants. He must reduce his allegations either to a cause or causes of action

against one defendant, or else to a wholly joint cause of action against both. If the plaintiff herein chooses to confine his petition against the Simmons Warehouse Company and the city of Sioux City to an alleged cause of action wholly joint, and to eliminate therefrom all allegations upon which only several liability can be predicated, there is nothing in our holding to forbid such course.

The petition for rehearing is accordingly overruled.