## Mountain Water Supply Co. et al. v. Sagamore Coal Co. et al.

*Equity—Jurisdiction — Parties — Subject-matter of prior pending suit—Mines and mining—Contamination of waters—Multiplicity of suits—Multifariousness.*

1. In equity the pendency of a prior suit will not be a bar to a subsequent suit if the latter embraces more as to parties and subject-matter than the former.

2. If all the matters and causes of action alleged in a bill in equity can be covered by one decree, the bill is not multifarious.

3. In order to authorize the joinder of defendants in equity there must be some community of interest between them with respect to the subject-matter of the controversy. But it is sufficient if all have a common interest centered in the point in issue, or are interested in the general subject of the litigation.

4. Numerous defendants operating coal mines, separately and independently of each other, in the drainage basin of a stream, and each draining the mine water from his or its mine, highly impregnated with sulphuric acid, into the pure waters of the stream above a storage dam, may be joined as defendants in a bill in equity by incorporated water companies owning the dam, to restrain the drainage of said mine waters into the stream, thereby rendering the waters of the stream, when they reach the storage dam, unfit for domestic use or for commercial or manufacturing purposes, to which uses the owners of the dam have been devoting them, on the ground that each of the mine owners co-operates in fact in producing the effect complained of by plaintiffs, and also on the ground of preventing a multiplicity of suits.

Joint and several demurrer to a bill in equity. C. P. Fayette Co., in Equity, No. 1023.

*Paul H. Gaither, Smith & Best* and *Playford & Phillips,* for plaintiffs.

*Reed, Smith, Shaw & Beal, Crow, Shelby & Tabor, McDonald & Cray* and *John S. Brooks, Jr.,* for demurring defendants.

VAN SWEARINGEN, P. J., Jan. 24, 1922.—Broadly and generally speaking, it is alleged in the bill that the Mountain Water Supply Company, one of the plaintiffs, incorporated for the purpose of storing, transporting and furnishing water, and the Dunbar Water Supply Company, another of the plaintiffs, incorporated for the purpose of supplying water to the public in Dunbar Township, legally appropriated certain of the waters of Indian Creek, in Springfield Township, Fayette County, which waters are collected into a masonry storage dam of a capacity of 251,000,000 gallons and withdrawn therefrom by the two companies under an agreement between themselves; that the Pennsylvania Railroad Company, the other plaintiff, purchased and acquired the entire capital stock of each of the water companies for the purpose of enabling it to secure an adequate supply of water, and has constructed and maintains an extensive system of water facilities to conduct the water to points of consumption; that all the facilities of the three plaintiff companies are being used for the sole purpose of enabling them to utilize the waters of Indian Creek for their respective corporate purposes; that each of the thirty individual, partnership or corporation defendants claims to have acquired and to own a large area of coal, a portion of the coal of each of the defendants being within the drainage basin of Indian Creek; that each of the defendants has opened a mine or mines on his or its property for the purpose of mining and removing coal therefrom, all at points within the drainage basin of Indian Creek, and generally at an altitude higher than the thread of the stream, and has drained the mine water, highly impregnated with sulphuric acid, into the pure waters of Indian Creek; that it is the purpose and intention of the defendants to develop their respective mines, and that there thus will be liberated daily larger quantities of polluted and destructive mine waters

which will flow into the waters of Indian Creek; that the waters of Indian Creek already have been injured, polluted and contaminated; that if the respective acts of the defendants be persisted in, the waters of Indian Creek soon will be polluted to such an extent as to render them utterly useless to the plaintiffs for the purpose to which the same have been and are being devoted and unfit for domestic use or for commercial or manufacturing purposes; and that the acts of the defendants, in so polluting the waters of Indian Creek, constitute an ever-increasing public and private nuisance.

In the twenty-ninth paragraph of the bill it is alleged that the plaintiffs have filed separate bills against ten of the defendants, but that none of those suits are at issue and none have been heard by the court. The thirtieth paragraph of the bill alleges: "That each of the defendants named in the preceding paragraph, in answering the said separate bills so as aforesaid filed against each, averred, inter alia, as follows: 'We deny that the waters of Indian Creek are or shortly will be, through any act of ours, polluted to such an extent as to render them useless to the Pennsylvania Railroad Company, or unfit for domestic use, or for commercial or manufacturing purposes,' thereby contending, as your orators aver, that the plaintiffs are not entitled to the relief therein sought, unless the said alleged wrongful act of each defendant would alone pollute the waters of Indian Creek to such an extent as to render them unfit for use by your orators, said separate answers, however, not denying that the combined polluted waters from all the mines of all the defendants would render the otherwise pure waters of Indian Creek unfit for use by your orators." The thirty-second paragraph of the bill alleges: "Your orators further aver that the injury to your orators by reason of the wrongful acts of the defendants herein complained of is the joint effect of the said wrongful acts of the defendants, which said wrongful acts were and are originally several, but are combined before the said polluted mine water reaches the said masonry dam from whence your orators obtain their supply of water, each for its proper corporate purpose. That the defendants, against whom separate bills have been filed, in their respective answers, claim a common right to discharge said polluted water into the channel of Indian Creek, and that the injury thus resulting to your orators from the said combined wrongful acts of all of the defendants is a single injury, and that all of the defendants have been, and still are, contributing to such injury. That the defendants herein, as your orators believe, are all the persons within the jurisdiction of this court who are now engaged, or threaten to engage, in the commission of the wrongful acts hereinabove complained of."

Alleging that all of the said several defendants began to drain, and still continue to drain, the polluted waters from their respective mines into the otherwise pure waters of Indian Creek, each of them well knowing that said polluted water flowing from said mines would, and did, commingle with the otherwise pure waters of Indian Creek at a point above said masonry storage dam, and each of them, with knowledge of such wrongful acts being committed by the others, continued in such wrongful acts with knowledge of the superior rights of the plaintiffs in and to the waters of Indian Creek; that should the defendants be permitted to persist in their unlawful acts, resulting in the pollution and destruction of the waters of Indian Creek, the investment, not only of the Mountain Water Supply Company and the Dunbar Water Supply Company, but that of the Pennsylvania Railroad Company, in dams, pipes, reservoirs and other equipment, will be practically destroyed and rendered of no value except as scrap, thereby entailing a loss in equipment amounting to more than $3,500,000 to the Mountain Water Supply Company,

1 D. & C.

a loss of more than $7,500,000 to the Pennsylvania Railroad Company, and a loss of $80,000 and upwards to the Dunbar Water Supply Company; that, in addition to said loss, the operations of the Pennsylvania Railroad Company as a common carrier of passengers and freight would be necessarily and seriously interfered with, impaired and restricted; that the supply of water received by the plaintiffs from Indian Creek cannot be duplicated within any economic distance from the place where the Pennsylvania Railroad Company must receive its water for its corporate purposes; that the destruction of the waters of Indian Creek by pollution thereof with mine water would not only unlawfully deprive the plaintiffs of the natural and reasonable use of their property, but would greatly injure and hamper the public service of the Pennsylvania Railroad Company as a common carrier and deprive the inhabitants of the Commonwealth of the use of its large supply of pure water for domestic, commercial and manufacturing purposes; that the plaintiffs are not seeking relief in damages for past injuries, but only equitable relief, by restraining the commission of said wrongful acts by the several defendants in the future, to the end that in time to come each of the said defendants shall cease to contribute to the single injury to the plaintiffs, to wit, the alleged wrongful pollution of the waters of Indian Creek; that the plaintiffs, and each of them, need equitable relief, having no adequate remedy at law; that the continued and combined acts of the defendants complained of, if continued, will work irreparable injury to the plaintiffs and to the public and to the Commonwealth of Pennsylvania, and will interfere with interstate and intrastate commerce; that the maintenance of this bill against all of the defendants will avoid the prosecution of a multiplicity of suits; that the injury complained of is a single one to the plaintiffs, caused by the combined wrongful acts of all the defendants; and that adequate relief cannot be awarded to the plaintiffs by means of the prosecution of the said separate bills filed against the defendants; the plaintiffs pray that an injunction be granted restraining the defendants, and each of them, from discharging, pumping, or causing, or permitting to flow, or to be discharged, any drainage of mine water from the said mines, and from the mine or mines of each, into the waters of Indian Creek, or its tributaries, in Fayette County.

Three of the defendants, the Melcroft Coal Company, the Oneida Coal Mining Company and the Indian Creek Coal and Coke Company, have filed a joint and several demurrer to the bill, in which it is stated:

"(1) It appears by the twenty-ninth paragraph of the bill of complaint that the same plaintiffs have heretofore filed bills in equity in this court against these defendants, wherein the same alleged wrongs and causes of action are set forth and the same relief sought; and it further appears by said paragraph of the bill of complaint that said actions are pending and undetermined in this court, and these defendants respectfully insist that they cannot lawfully be compelled to defend this suit while said other suits are pending.

"(2) It appearing by the bill of complaint that there is no combination, conspiracy, agreement or joint action between and among the defendants, the bill is multifarious.

"(3) As the bill does not allege that the circumstances under which each defendant is mining coal are the same, the bill is multifarious."

1. Counsel for the demurring defendants, in their brief, urge upon the court that when "a prior suit is pending in the same court by the same plaintiffs against the same defendant, asking the same relief on the same state of facts in regard to the same property," judgment should be given for the defendant

upon his demurrer. But that is not this case. Here, the parties are not the same, there being thirty corporations, partnerships and individuals named as defendants, while in each of the separate bills filed against these demurring defendants respectively but one defendant was named. Nor is the relief sought in this bill based on the same state of facts as in each of the separate bills filed. True, in the separate bills it was sought to restrain each of the respective defendants from committing in the future the wrongful, unlawful acts alleged already to have been committed by them respectively, and it was denied in answer by each of the defendants named in the separate bills that the waters of Indian Creek had been, or shortly would be, through any act of theirs, polluted to such an extent as to render them useless to the Pennsylvania Railroad Company, or unfit for domestic use or for commercial or manufacturing purposes, and was contended by each of the defendants in the cases of the separate bills, as alleged in this bill, that the plaintiffs were not entitled to the relief sought unless the alleged wrongful act of each defendant would alone pollute the waters of Indian Creek to such an extent as to render them unfit for use by plaintiffs, in consequence whereof, in this bill, it is the averment that it is "the joint effect of the said wrongful acts of the (thirty) defendants, which said wrongful acts were and are originally several, but are combined before the said polluted mine water reaches the said masonry dam from whence your orators obtain their supply of water," and the allegation that "the injury thus resulting to your orators from the said combined wrongful acts of all of the (thirty) defendants is a single injury, and that all of the (thirty) defendants have been, and still are, contributing to such injury," upon which the prayer for the relief sought is based.

Counsel for the demurring defendants say in their brief: "The rule in Pennsylvania is no different from the general rule obtaining in the Federal courts and throughout the United States," citing 1 Corpus Juris, 45-47, where it is said: "(1) It is a well-settled general principle of the law that the pendency of a prior action or suit for the same cause between the same parties in a court of competent jurisdiction will abate a later action or suit either in the same court or in another court of the same jurisdiction. The principle on which pleas of another action pending are sustained is that the law, which abhors a multiplicity of suits, will not permit a defendant to be harassed and oppressed by two actions for the same cause where plaintiff has a complete remedy by one of them. (2) As a general rule, the pendency of a prior suit in equity may be pleaded in abatement to the prosecution of a subsequent suit in equity in the same jurisdiction, between the same parties and upon the same equity; and the rules governing this ground of abatement are substantially the same in equity as at law, although they are applied in equity with some modification and with a more liberal discretion." But in Massachusetts Mutual Life Ins. Co. *v.* Chicago & Alton R. R. Co., in the Circuit Court of the United States for the Northern District of Illinois, 13 Fed. Repr. 857, in an opinion written by Mr. Justice Harlan, of the Supreme Court of the United States, sitting as Circuit Justice, it was held, as stated in the second paragraph of the syllabus: "The pendency of a prior suit will not be a bar to a subsequent suit if the latter embraces more, as to parties and subject-matter, than such prior suit." On appeal to the Supreme Court of the United States, under the title of Chicago & Alton R. R. Co. *v.* Union Rolling Mill Co., 109 U. S. 702, upon various assignments of error, the judgment of the Circuit Court was affirmed. And in Chicago, Burlington & Quincy R. R. Co. *v.* Weil et al., in the United States Circuit Court of Appeals, Eighth Circuit, 183 Fed. Repr. 956, Mr. Justice Van Devanter, of the Supreme Court of the United

1 D. & C.

States, then sitting as Circuit Judge, after quoting what was said by Mr. Justice Harlan in the case last cited on the subject now under consideration, said: "We conclude that in equity the rule in respect of such pleas, although analogous to the rule at law, is not absolute or inflexible, but is a rule of justice, which is designed to be so administered as to prevent the oppression and unnecessary vexation of defendants, and yet to accord to complainants the right to pursue any remedy which is reasonably essential to their complete and adequate protection. And, applying this conclusion to the circumstances of the present case, we think the plea was not well taken and should have been overruled. Not only was the scope of the suit in the Circuit Court more extensive in its subject-matter and parties, but there was obvious propriety in directing it against all who were engaged in the concerted and combined violation of the complainants' rights."

Therefore, in the present case, because the scope of the bill now before us is broader and more extensive in its subject-matter and parties than any of the separate bills filed against the demurring defendants respectively, inasmuch as it is but justice to accord to the complainants the right to pursue the remedy which they believe to be essential to their adequate protection, yet not imposing oppression or unnecessary vexation on the defendants, but rather preventing a multiplicity of suits, and believing that there is very great propriety under the circumstances in directing the bill against all of the defendants named therein, especially in view of the answers to the separate bills heretofore filed, respectively, we are of opinion that the pendency of the separate bills against the demurring defendants does not constitute a legal bar to the maintenance of the present bill.

2. It is not necessary that there shall be a "combination, conspiracy, agreement or joint action between and among the defendants" in order to free the bill of multifariousness. "In order to authorize the joinder of defendants in equity there must be some community of interest between them with respect to the subject-matter of the controversy, otherwise the bill will be bad for multifariousness. But it is sufficient if all have a common interest centered in the point in issue, or are interested in the general subject of the litigation:" 21 Corpus Juris, 314. "There appears to be no positive or inflexible rule reconcilable with all the authorities as to what shall constitute multifariousness in a bill, but each case must in a great measure be governed by its own circumstances and much must be left to the discretion of the court. As the term multifariousness is understood to-day, it may be briefly defined as the improper joinder of distinct and independent matters in one bill. This definition contains the essence of the offence, but it embraces two distinct classes of multifariousness: (1) The simple joinder of distinct subject-matters in one bill, strictly known as misjoinder of causes; and (2) the joinder of distinct subject-matters in one bill against several defendants, some of whom have no interest whatever in one or more of the causes thus joined:" 1 Whitehouse's Equity Practice, § 109. "The general rule is that all persons are to be made parties who are either legally or equitably interested in the subject-matter and result of the suit, however numerous they may be, if they are within the jurisdiction and it is in a general sense practicable so to do:" 3 Story's Equity Jurisprudence (14th ed.), § 1981. "It may be said to be a general rule, and perhaps a sufficient test, that if all of the matters and causes of action alleged in the bill of complaint can be covered and completely settled by one decree, the bill is not multifarious, for in such a case it would have but one object which is satisfied by a decree:" Van Zile's Equity Pleading and Practice, § 39. "The best authorities concur

in the test, that the reason a bill is multifarious is in consequence of the joinder of distinct, independent and separate causes of complaint, requiring different defences and different decrees:" Cumberland Valley R. R. Co.'s Appeal, 62 Pa. 218.

The case which covers the present one probably the most completely of any of the decisions in the books is Woodruff *v.* North Bloomfield Gravel Mining Co. et al., in the Circuit Court of the United States for the District of California, commonly known as The Debris Case, 16 Fed. Repr. 25. The substance of the decision is stated in the syllabus as follows: "(1) Several parties owning extensive mines at various points on the affluents of the Yuba River work them independently of each other by the hydraulic process, discharging their waste earth and other débris into the stream, whence it flows down into the main river, where the débris becomes mingled into one indistinguishable mass, passes on, and is deposited along the course of the river in the valley below, burying valuable lands and creating a public and private nuisance. A bill in equity by a party injured against all the parties thus contributing to the nuisance to enjoin it is not demurrable as being multifarious or for a misjoinder of parties defendant. (2) The parties thus creating the nuisance may be joined in equity, both on the ground that they co-operate in fact and actually contribute to the nuisance, the injury being the single result of the action of the débris combined, and operating together long before it reaches the place where the injury is effected; also, on the ground of avoiding a multiplicity of suits." The defendants demurred to the bill on the ground that each defendant was pursuing its business, severally, without any connection with the others, and without any joint intent or joint action; that the cause of action was distinct and several as against each defendant, and neither the defendants nor the several causes of action could be joined in the same suit. In disposing of the case, Circuit Judge Sawyer said, *inter alia:* "It is true that each defendant is, independently, working its own mines without any conspiracy or preconcert of understanding or action with the others; but they all pour their mining débris into the several streams, which they know must, by the force of the currents, be carried down into the main river, where they must commingle into one indistinguishable mass long before they reach the point where the nuisances complained of are committed and the damages are created. This commingling of the débris discharged into the various streams by the several defendants, and passing on to work the destruction alleged—this aggregation of waste material, which, after aggregation, is precipitated upon the plains below and creates the nuisance—is the necessary and natural consequence of the action of the several defendants, and they must, respectively, be presumed to know and to contemplate these natural and known physically necessary results. The nuisance is created by the joint action of the débris from the various mines, which is combined, and afterwards flows on together long before it reaches the lands injured and threatened, and after such combination creates the nuisance complained of. There is, therefore, a co-operation in fact, if not in intent, of these several defendants in the production of the nuisance. The injury is the joint effect of acts originally several, but combined before the débris is precipitated upon the lands below and the injury is effected, and in contemplation. of equity it constitutes a single cause of action. There is a common interest in the right claimed to discharge débris into the stream. The defendants, each and all, claim a common though not a joint right. The final injury is a single one—a single result of the combined operation of this débris—and all the defendants co-operate in fact in producing it. No dam-

DISTRICT AND COUNTY REPORTS.                    637

Mountain Water Supply Co. et al. *v.* Sagamore Coal Co. et al.

ages are sought. Only equitable relief is demanded by restraining future action—a future contribution by each to the nuisance." And after citing authorities in support of the rule that "an equitable action will lie to restrain parties who severally contribute to a nuisance, while it holds that they cannot be joined in an action at law," Judge Sawyer continued: "No inconvenience or additional costs can result to the several defendants in this suit from being joined with others, who also contribute to the same nuisance by originally independent action—action in its inception and first stages several, but ultimately co-operating to produce the nuisance. On the contrary, it is convenient to dispose of it in one case, and the costs are diminished to each individual rather than increased by a single suit. The costs can be apportioned in equity, if proper, and the administration of justice is thus facilitated. In fact, it is the only adequate mode of proceeding in cases like this. . . . I also think this bill maintainable against all the defendants on the jurisdictional ground of avoiding a multiplicity of suits. There is a common interest, a common though not joint right claimed, and the action on the part of all the defendants is the same in contributing to the common nuisance. The rights of all involve and depend upon identically the same questions, both of law and fact. It is one of the class of cases, like bills of peace and bills founded on analogous principles, where a single individual may bring a suit against numerous defendants; where there is no joint interest or title, but where the questions at issue and the evidence to establish the rights of the parties and the relief demanded are identical." The case was before the court again on its merits, and is reported in 18 Fed. Repr. 753, and again on a proceeding for contempt for violation of an injunction granted, reported in 45 Fed. Repr. 129, but at no time were the principles above enunciated in any way modified.

In Norton et al. *v.* Colusa Parrot Mining and Smelting Co. et al., in the Circuit Court of the United States for the District of Montana, 167 Fed. Repr. 202, complainants, who were owners of farm lands, together with water rights belonging thereto, sought to enjoin the defendants, engaged in the operation of smelting plants for the treatment and reduction of ores, from impregnating, polluting and poisoning the waters of certain tributaries of the Deer Lodge River, from which stream the complainants obtained water for the irrigation of their farms and for domestic purposes. A separate demurrer to the bill was interposed by each of the three defendant companies, on grounds, *inter alia*, that there was a misjoinder of parties defendant, in that the acts alleged to have been committed by the defendants were not committed, or claimed to have been committed, in common or jointly by the defendants, but were separate and independent acts committed by each defendant. In disposing of the case on that point, District Judge Hunt said: "It is an established rule of equity that where several persons are alleged to have contributed, and are continuing to contribute, to the same general nuisance, on account of which complainants suffer, all such contributing persons may be joined as defendants." In Morris *v.* Bean et al., in the Circuit Court of the United States for the District of Montana, 123 Fed. Repr. 618, there was a bill to restrain the diversion by defendants of the waters of a stream, preventing them from reaching complainant's irrigating ditch, and it was claimed by the defendants that their diversions were separate and wholly independent diversions, that they were not joint, concerted diversions, and that, therefore, the action could not be maintained against them jointly, but that contention was overruled by District Judge Knowles, and an injunction was granted. In Ladew *v.* Tennessee Copper Co. et al., in the Circuit Court

of the United States for the Southern District of Tennessee, 179 Fed. Repr. 245, where it was sought to restrain an alleged nuisance created by defendants by means of furnaces, smelters and ovens, which generated vast quantities of smoke and fumes, which inextricably mingled a short distance from their works and together were discharged upon complainants' lands and forests, it was held, in an opinion by District Judge Sanford, that: "In a suit to abate or restrain a nuisance, as distinguished from an action for damages, all persons maintaining structures or carrying on operations whose effect mingles and combines in contributing to the injury to the plaintiff's property may properly be joined as defendants, although each transacts his own business separately and independently from the others." In Blaisdell *v.* Stephens, 14 Nev. 17, cited in The Debris Case, 16 Fed. Repr. 25, where the two defendants, Sessions and Stephens, each separately and independently of the other, allowed water to run from his lands upon the lands of the plaintiff, the combined action of which injured plaintiff's ditch and constituted the nuisance complained of, it was held to be a proper case for an injunction, although there could be no joint recovery at law for the damages. In Lockwood *v.* Lawrence, 77 Me. 297, where several respondents, though acting independently of each other, deposited the refuse material and débris arising from the operations of their saw-mills into the same stream, whence, by the natural current of the water, it was carried down the river and commingled into one indistinguishable mass before reaching the complainant's premises, it was held that this commingling of the waste thus thrown into the stream and which, after thus uniting and commingling, was precipitated by the current upon the premises of the complainant, creating the nuisance and inflicting the injuries of which he complained, was the natural and necessary consequence of the several and independent acts of the respondents; that whatever may have been the acts of the different respondents, either in the operation of their several mills or in the depositing of the waste and débris arising from such operations into the stream, there was a co-operation in fact in the production of the nuisance; that the claim thus to discharge the waste and débris from their mills into the stream constituted one common interest, though not a joint right; and that though the acts of the respondents may have been independent and several, the result of those several acts combined to produce whatever damage or injury the complainant suffered, and in equity constituted but one cause of action, and that all the respondents might be joined in the same bill to restrain the nuisance. "A riparian proprietor may maintain a suit in equity against several upper proprietors to restrain them, acting independently, from polluting the stream by depositing therein tanning refuse and filth, where the acts of all united and concurred in creating the nuisance and producing the injurious result:" Warren *v.* Parkhurst, 186 N. Y. 45, 78 N. E. Repr. 579. "A suit to abate a nuisance caused by the pollution of a stream by the operation of mills used in mining, owned and operated independently by several persons acting separately, is properly brought against all:" State ex rel. Federal Lead Co. *v.* Dearing (Mo.), 148 S. W. Repr. 618. To the same effect see, also, Draper *v.* Brown, 115 Wis. 361, 91 N. W. Repr. 1001; Merritt Township *v.* Harp et al. (Mich.), 91 N. W. Repr. 156; Graver *v.* Dodson Coal Co. et al., 20 Pa. C. C. Reps. 529; Anderson *v.* Lehigh Coal and Nav. Co. et al., 23 Pa. C. C. Reps. 343.

3. "The objection of multifariousness does not go to the merits and call upon the court to decide whether plaintiff has a case against any of defendants, but merely raises a question of convenience as to which the court is called upon to exercise its discretion:" 21 Corpus Juris, 411. "If the matter

1 D. & C.

DISTRICT AND COUNTY REPORTS. 639

Mountain Water Supply Co. et al. v. Sagamore Coal Co. et al.

in litigation is entire in itself and does not consist of separate things having no connection with one another, it is not necessary that each defendant should have an interest in the suit coextensive with the claim set up in the bill. He may have an interest in a part of the matter in litigation instead of the whole:" Van Zile's Equity Pleading and Practice, § 39. Indian Creek is the drainage stream of the valley or basin in which the coal properties of the defendants lie. Each of the defendants discharges mine water from his or its mine on the surface of the land in the water-shed tributary to the stream. The water is impregnated with sulphur, commingles with the pure waters of the stream, and these commingled waters finally reach the reservoir from which plaintiffs draw their water supply, and it is impossible to separate the waters or to ascertain from an analysis from which mine any given part or quantity of the sulphur comes. The injury to plaintiffs is complete when the waters reach the impounding reservoir. Each of the defendants contributes to what becomes a single injury.

And now, Jan. 24, 1922, for the reasons stated in the opinion herewith filed, the joint and several demurrer of the defendants, Melcroft Coal Company, Oneida Coal Mining Company and Indian Creek Coal and Coke Company, is overruled and dismissed.                    From Luke H. Frasher, Uniontown, Pa.