STATE, Respondent, vs. P. LORILLARD COMPANY and others, Appellants.

*April 6—October 16, 1923.*

*Monopolies: Statutes relating to trusts and conspiracies: Constitutionality: Action: To enjoin conspiracy and to obtain incidental relief: Misjoinder: Authority of attorney general to bring action: Statutes: Presumption of validity: Complaint: Failure to allege continuance of unlawful acts: Amendment.*

1. There is no misjoinder of causes of action in a complaint by the state to restrain the formation or execution of contracts in restraint of trade by all of the defendants, to recover of each the forfeiture imposed by statute, to cancel the charters of the defendant state corporations for the violation of sec. 1791*j*, Stats., and the licenses of the defendant foreign corporations for the violation of sec. 1770*g*, there being but one cause of action; the primary right of the state being to prevent the continued violation of sec. 1747*e*, and it being

immaterial that as incidental to it there may be different forms of relief as against different defendants.

2. That an action to restrain a combination in restraint of trade, in violation of sec. 1747e, Stats., was brought by the district attorney "on the advice of the attorney general, who may appear as counsel," as provided by sec. 1747f, sufficiently appears by the summons and complaint being signed by both, though the name of the attorney general appeared first and was not followed by the words "of counsel."

3. Under secs. 1791j and 1770g, Stats. (dealing respectively with domestic and foreign corporations, and providing that, if they enter into a combination to restrain trade, the charters of the former shall be revoked and the licenses of the latter to do business in the state be canceled), secs. 1771i and 1791l (providing that, on complaint to the attorney general and evidence produced to him satisfying him that they had so combined, he shall bring an action in the name of the state for revocation of charter or cancellation of license, as the case may be), and sec. 1791k (making it his duty, under specified conditions, to make inquiry of domestic corporations as to violation of the anti-trust laws), he may, of his own motion, on obtaining knowledge from any source of such a violation, bring such an action; and the mere fact of his doing so and charging such a violation in the complaint is all that is necessary, and is of itself sufficient evidence of his being satisfied there was a violation, without any allegation in the complaint to that effect.

4. Judicial notice may be taken of the journals of the legislature to determine whether there has been a compliance with the requirements for the enactment of a statute.

5. Sec. 13.06, Stats., providing that bills introduced in either house for the appropriation of money shall be referred to the committee on finance before being passed or allowed, does not require a reference by each house to such committee (which is a joint committee composed of members of both houses) before final vote is taken by it.

6. Ch. 458 of the Laws of 1921 (sec. 1747e, Stats.), entitled "An act to protect trade and commerce against unlawful trusts and monopolies," considered as a whole and in view of the presumption of its constitutionality, does not prohibit any legitimate contract, but only those tainted by an unlawful combination tending to the public detriment.

7. The rule that a statute will be held void as a whole where it contains void portions so connected or interwoven with the valid parts that they cannot be separated, and it is plain

State v. P. Lorillard Co. 181 Wis. 347.

that the objectionable parts were an inducement to the enacting of the valid parts, has no application to ch. 458, Laws 1921, declaring invalid every contract or combination in the nature of a trust or conspiracy in restraint of trade, even if secs. 1747h, 1747h—1, 1747h—3, and 1747h—4, declaring certain exemptions from the anti-trust laws, are unconstitutional, those sections having been enacted in previous years and not being re-enacted or referred to by the Laws of 1921.

8. A complaint states no cause of action for injunctive relief by way of prevention against an unlawful combination in restraint of trade where it is not alleged that defendants are continuing or threatening to continue such combination, all its allegations being in the past tense and relating to completed transactions.

9. A complaint which, proceeding on the theory that an equitable cause of action for injunction against a combination in restraint of trade is stated, prays that the court retain jurisdiction to annul the charters and licenses of defendants and grant a judgment for money forfeitures against them, fails to state a cause of action for injunction because its allegations are only as to the past; it is, however, subject to amendment.

ROSENBERRY, J., dissents. ESCHWEILER, J., dissents in part.

APPEALS from an order of the circuit court for Milwaukee county: W. B. QUINLAN, Judge. *Reversed.*

For the appellant *P. Lorillard Company* there were briefs by *Olin, Butler, Thomas, Stebbins & Stroud* of Madison, and oral argument by *Byron H. Stebbins.*

For the appellant *American Tobacco Company* there were briefs by *Olwell, Durant & Brady* and *James T. Drought,* all of Milwaukee, and oral argument by *Mr. Lawrence A. Olwell* and *Mr. Drought.*

*George E. Ballhorn,* attorney, and *George H. Katz,* of counsel, both of Milwaukee, for appellants other than the *P. Lorillard Company, American Tobacco Company,* and *M. L. Annenberg.*

For the appellant *Annenberg* there was a brief by *Theodore Kronshage, Jr.,* and *Otto Dorner,* both of Milwaukee.

For the respondent there was a brief by the *Attorney General, Daniel H. Grady* of Portage, special counsel, and

*George A. Shaughnessy,* district attorney of Milwaukee county, and oral argument by *Mr. Grady.*

The following opinions were filed May 1, 1923:

JONES, J.    This is an appeal from an order overruling defendants' demurrers to the complaint. The complaint alleged:

"1. That the *American Tobacco Company* is a duly organized corporation existing under and by virtue of the laws of the state of New Jersey, and that on the 18th day of May, 1912, said corporation was duly licensed to do business in the state of Wisconsin, which license is still in effect; that since the 18th day of May, 1912, it has been and now is doing business in the state of Wisconsin and maintains a factory and warehouses in the city of Milwaukee, Milwaukee county, Wisconsin, having agents and salesmen within the state of Wisconsin.

"2. That the *P. Lorillard Company* is a duly organized corporation existing under and by virtue of the laws of the state of New Jersey, and that on the 14th day of December, 1911, the said *P. Lorillard Company* was duly licensed to do business in the state of Wisconsin, which license is still in effect; that since the 14th day of December, 1911, the said *P. Lorillard Company* has been and is now doing business in the state of Wisconsin, maintaining a warehouse at Madison, Wisconsin, and having agents and salesmen in this state."

3–7. That the *Schneider Tobacco Company, Badger Tobacco Company, A. S. Goodrich Company, Lewis-Leidersdorf Company,* and *Peckarsky Brothers Company* are duly organized Wisconsin corporations existing under and by virtue of the laws of the state of Wisconsin, engaged in the wholesale jobbing business in cigarets and tobacco, having their principal place of business in Milwaukee, Milwaukee county, Wisconsin.

8–13. That certain persons are engaged in the wholesale jobbing business in cigarets and tobacco in Milwaukee and surrounding territory, either as individuals or members of copartnerships.

"14. That the *Association of Wholesale Tobacconists* is a corporation purporting to be organized under the laws of

the state of Wisconsin, for which articles of incorporation were issued on the 17th day of May, 1920, which organization will be more particularly referred to herein.

"15. That the said *P. Lorillard Company* and the *American Tobacco Company* were formerly members of a combination in restraint of trade which attempted to monopolize the tobacco business of the United States and which was dissolved by a decree of the federal court; that the said *P. Lorillard Company* and the *American Tobacco Company* manufacture about seventy per cent. of the tobacco products sold in the state of Wisconsin; that each of said companies has published a certain list price for their products, which list price does not purport to be the price at which the said respective companies shall sell their products, but is a price sought by said companies to be maintained after their products are in other hands in the course of trade.

"16. That the tobacco-distribution business and the sale of tobacco, other than by manufacturers, is in the hands of jobbers, sub-jobbers, and retailers; that the jobbers consist of wholesalers who are placed upon an accredited list of the manufacturers and are permitted to buy direct from the manufacturers; that the sub-jobbers are wholesalers who are not placed upon the accredited lists of the manufacturers, nor are they permitted by said manufacturers to buy direct from the manufacturers, nor to receive jobbers' discounts; that the retailers, in turn, who sell to the consuming public, are permitted only to buy from said sub-jobbers or jobbers.

"17. That the transactions hereinafter referred to relate solely to intrastate commerce, consisting of sales by jobbers to sub-jobbers and sales by jobbers to retailers, or sub-jobbers to retailers, entirely within the limits of the state of Wisconsin.

"18. That the tobacco and cigarets referred to herein are commodities and articles in general use in this state, and sold generally to the public.

"19. That between the 6th day of July, 1921, and the 20th day of October, 1921, in the city of Milwaukee, Milwaukee county, Wisconsin, the defendants above named unlawfully conspired, combined, and agreed to prevent competition in the supply and price of tobacco and cigarets, which articles are in general use in this state and were intended to be sold herein as a subject of commerce or trade; that said combination and conspiracy did control and fix

the price of said articles and commodities and did illegally restrain commerce and trade within the state of Wisconsin, contrary to the provisions of chapter 458, Laws of 1921.

"20. That for the purpose of more easily accomplishing their aims and purposes, the defendants organized and created an association among said defendants for the purpose of regulating prices and controlling competition, establishing rules and regulations; that said association at first was not incorporated, but consisted of a trade association among the wholesale jobbers, but for the purpose of more easily accomplishing their designs the said jobbers incorporated and formed the *Association of Wholesale Tobacconists*.

"21. That said defendants, conspiring, combining, and agreeing among themselves with the intention of restraining trade and preventing competition, with the purpose of driving out of business the sub-jobbers in the city of Milwaukee and the surrounding territory in the state of Wisconsin, did restrain commerce and prevent competition and did control the price of the articles hereinbefore mentioned (a) by refusing to sell to sub-jobbers other than were on the jobbers list; (b) by agreeing not to increase the number of the sub-jobbers who might buy from the jobbers at sub-jobbers' rates; (c) by systematically increasing the price at which said sub-jobbers might purchase tobacco and cigarets from the jobbers to such an extent that it would be impossible for said sub-jobbers to do business; (d) by preventing said sub-jobbers from becoming jobbers and buying supplies from manufacturers direct; (e) by systematically cutting off the supply of tobacco and cigarets which said sub-jobbers might purchase, unless the sub-jobbers became parties to price-fixing and maintenance agreements; (f) by limiting and attempting to limit the persons with which said sub-jobbers might deal; (g) by collectively threatening the said sub-jobbers with cutting off their entire supply of tobacco and cigarets; (h) by collectively threatening to drive the sub-jobbers out of business unless they agreed to the demands of the said jobbing association.

"22. That said defendants further restrained trade and controlled prices by agreeing to fix the price at which tobacco would be sold by members of the jobbing association to retailers outside of the city of Milwaukee and in the state of Wisconsin, and on or about the 1st day of September, 1921,

increased the price by collectively refusing discounts at which said tobacco and cigarets were formerly sold by said jobbers to retailers.

"23. That said defendants further fixed prices and controlled the sale of the commodities hereinbefore referred to and restrained trade by meeting every two weeks at either the Wisconsin Hotel or the Chamber of Commerce building, at which meetings trade arrangements and understandings were had and made affecting competition and prices, and knowledge communicated to members of the association, with the idea and purpose of eliminating competition between the various members of the association.

"24. That said defendants further controlled prices and restrained trade, as hereinbefore alleged, by collectively urging and coercing retailers in the maintenance of certain prices, to the detriment of the consuming public.

"25. That said defendants further restrained trade, controlled the price, and eliminated competition by collectively agreeing and fixing the price at which retailers in the city of Milwaukee might purchase tobacco from said jobbers or sub-jobbers.

"26. That said defendants further restrained trade and competition by threatening sub-jobbers with the false statement that Liggett & Myers Company and R. J. Reynolds Company would join with these defendants in cutting off the supply of said sub-jobbers unless they became parties to this price-fixing combination and agreement and would maintain the price agreed upon.

"27. That each of the defendants, respectively, became indebted to the state of Wisconsin, and on the 20th day of October, 1921, were indebted to the state of Wisconsin in the amount of $5,000, whereby an action accrues according to the provisions of chapter 458, Laws of 1921.

"Wherefore the state of Wisconsin demands judgment against each of said defendants in the sum of $5,000, and for such relief as the state may be entitled to in the premises."

The *P. Lorillard Company* demurred to the complaint:

"1. For the reason that it appears upon the face thereof that the complaint does not state facts sufficient to constitute a cause of action.

"2. And for the reason that it appears upon the face

thereof that several causes of action have been improperly united."

A like demurrer was filed by the *American Tobacco Company*.

Defendant *Schneider Tobacco Company* demurred to the complaint on the following grounds:

"That the court has no jurisdiction of the person of the defendant and has no jurisdiction of the subject of said action.

"That several causes of action have been improperly united.

"That the complaint does not state facts sufficient to constitute a cause of action."

The demurrers of the remaining defendants are like that of the *Schneider Tobacco Company*.

On December 16, 1921, there was filed an amendment to the complaint, and motion was made to strike out that part of the original complaint demanding judgment against each of the defendants in the sum of $5,000, and to substitute therefor the following:

"I. That the defendants in the above described combination and conspiracy, and servants, employees, agents, and all persons acting in their behalf be perpetually enjoined, restrained, and prohibited from combining, agreeing, or conspiring to restrain trade or competition in the sale of tobacco or cigarets in the state of Wisconsin, and more particularly that they be enjoined and restrained from collectively agreeing to fixing or establishing in any manner whatsoever by agreement, understanding, or otherwise among themselves the prices at which tobacco or cigarets may be sold by said defendants to jobbers, retailers, or other members of the consuming public, and further from maintaining, using, or continuing to use collectively minimum prices or minimum discounts by said defendants in the sale of cigarets and tobacco or agreeing among themselves to establish or adopt terms, conditions, and policies which would tend to fix prices at which cigarets or tobacco should be sold by said defend-

ants or their customers; from collectively agreeing upon the maintenance of resale prices by either retailers or wholesalers.

"(1) From collectively threatening sub-jobbers with cutting off their supply of tobacco or threatening them in any manner for the purpose of compelling said sub-jobbers or retailers to sell tobacco and cigarets at prices fixed or sug-. gested by said defendants.

"(2) From aiding, abetting, or assisting individually or collectively others to do all or any of the matters herein set forth in this complaint.

"II. Demands further that the court retain jurisdiction herein, and that upon such jurisdiction so retained the state have judgment (a) annulling and canceling the corporate charters of the *Schneider Tobacco Company,* the *Badger Tobacco Company,* the *A. S. Goodrich Tobacco Company,* the *Lewis-Leidersdorf Company, Peckarsky Brothers Company,* and the *Association of Wholesale Tobacconists,* all domestic Wisconsin corporations; and (b) annulling and canceling the authority and license to do business in the state of Wisconsin of the *P. Lorillard Company,* a foreign corporation organized under the laws of New Jersey, as hereinbefore alleged, and the license and authority of the *American Tobacco Company,* licensed to do business in the state of Wisconsin, as hereinbefore alleged.

"III. That the court retain jurisdiction herein, and upon such jurisdiction the state of Wisconsin demands judgment further against each of said defendants in the sum of $5,000, and for such other relief, legal or equitable, as the state may be entitled to in the premises and as may seem just and equitable to the court.

"IV. And for its costs and disbursements in this action."

It was stipulated that the demurrers to the original complaint should stand as and for the demurrers to the amended complaint.

The trial court overruled the demurrers, to which order appropriate exceptions were taken.

Among other statutes relied on by the state is ch. 458,

Laws of 1921, now numbered sec. 1747e, Stats., which is as follows:

"1. Every contract or combination in the nature of a trust or conspiracy in restraint of trade or commerce is hereby declared illegal. Every combination, conspiracy, trust, pool, agreement or contract intended to restrain or prevent competition in the supply or price of any article or commodity in general use in this state, to be produced or sold therein or constituting a subject of trade or commerce therein, or which combination, conspiracy, trust, pool, agreement or contract shall in any manner control the price of any such article or commodity, fix the price thereof, limit or fix the amount or quantity thereof to be manufactured, mined, produced or sold in this state, or fix any standard or figure in which its price to the public shall be in any manner controlled or established, is hereby declared an illegal restraint of trade. Every person, corporation, copartnership, trustee or association who shall either as principal or agent become a party to any contract, combination, conspiracy, trust, pool or agreement herein declared unlawful or declared to be in restraint of trade, or who shall combine or conspire with any other person, corporation, copartnership, association or trustee to monopolize or attempt to monopolize any part of the trade or commerce in this state shall forfeit for each such offense not less than one hundred dollars nor more than five thousand dollars. · Any such person, corporation, copartnership, trustee or association shall also be liable to any person transacting or doing business in this state for all damages he may sustain by reason of the doing of anything forbidden by this section.

"2. It shall be the duty of the attorney general to enforce the provisions of this act and to bring an action for the recovery of the forfeiture herein provided for, whenever complaint shall be made to him and evidence produced which shall satisfy him that there has been any violation thereof. The several district attorneys shall, upon the advice of the attorney general, who may appear as counsel in any such case, institute such actions or proceedings as he shall deem necessary to recover any forfeiture incurred on account of the violation of any of the provisions of this act."

State v. P. Lorillard Co. 181 Wis. 347.

*The demurrer as to misjoinder of causes of action.*

It is contended by the defendants that the complaint sets forth four different kinds of causes of action, each created by a separate statute as follows:

1. A cause of action, involving all the defendants, to prevent or restrain the formation of contracts in restraint of trade, or the execution of the purposes thereof.

2. Causes of action, involving the five Wisconsin corporations only, to cancel their charters for violation of sec. 1791*j*, Stats.

3. Causes of action involving the two foreign corporations only, to cancel their licenses to do business in this state for violation of sec. 1770*g*, Stats.

4. Causes of action, involving each defendant separately, to recover the forfeiture of $100 to $5,000 imposed for violation of sec. 1747*e*, Stats.

It is argued that the complaint states no single primary right constituting a single cause of action, and that the test whether there is more than one cause of action stated is whether there is more than one primary right sought to be enforced.

Counsel for defendants place great reliance on the case of *Hawarden v. Youghiogheny & L. C. Co.* 111 Wis. 545, 87 N. W. 472. In this action plaintiff was a coal dealer. The complaint was in two counts. The first was a cause of action at law to recover damages against defendants by reason of a malicious destruction of his business resulting from an alleged conspiracy on the part of the defendants. The second was a cause of action in equity by the plaintiff on his own behalf and on behalf of many others similarly situated to restrain the further enforcement of the conspiracy.

It was held that since it was alleged in the first count that there was a conspiracy and a combination to drive the plaint-

iff out of business, which was an unlawful purpose constituting malice in contemplation of law, and injury resulted, there was a good cause of action. It was also held that there was a cause of action stated in the second count, since courts of equity have jurisdiction to restrain such conspiracies when irreparable injury will result and legal remedies will prove inadequate or a multiplicity of suits will be necessary. But the court held that the two causes were improperly united, using the following language:

"The statute provides that causes of action, in order to be united in one complaint, 'must affect all the parties to the action.' Stats. 1898, sec. 2647. It is clear that this limitation would be violated if the two causes of action in this complaint are allowed to be united in one complaint. The first cause of action is a straight action at law for damages to the plaintiff alone. No one else has any interest in the judgment in that action, whatever it be. But the second cause of action is a cause of action in favor of a large number of persons, constituting a class represented by the plaintiff. Potentially all of the class are parties. They are invited to become formal parties plaintiff, and presumably will accept the invitation. Thus the first cause of action affects but one party plaintiff, whereas the second cause of action affects numerous parties plaintiff. The doctrine is frequently stated that the several causes of action for or against a person must affect him in the same capacity in order to make them capable of being joined." *Hawarden v. Youghiogheny & L. C. Co.* 111 Wis. 545, 552, 87 N. W. 472.

Undoubtedly this case gives stronger support to the contention made by defendants on this ground of demurrer than any other which has been cited. But we think it may be distinguished from the instant case. In that case in one cause of action plaintiff was suing alone merely for damages to himself in which no other person had any interest. In the other there was a large number of persons and the remedy prayed was injunction only. In that case no one but the plaintiff had any interest in the judgment for damages, if secured, and no other of the plaintiffs to be joined would be in any way affected by that judgment.

In the case at bar there is only one plaintiff, and if the plaintiff should prevail every defendant would be directly affected by the injunction, although as to the other questions involved each might be affected in a different manner.

Counsel also cite on this point the following decisions of this court: *Grand Rapids W. P. Co. v. Bensley,* 75 Wis. 399, 44 N. W. 640; *Younkin v. Milwaukee L., H. & T. Co.* 112 Wis. 15, 87 N. W. 861; *Draper v. Brown,* 115 Wis. 361, 91 N. W. 1001; *Boyd v. Mutual Fire Asso.* 116 Wis. 155, 90 N. W. 1086, 94 N. W. 171; *Luther v. C. J. Luther Co.* 118 Wis. 112, 94 N. W. 69; *Barnes v. Beloit,* 19 Wis. 93; *Shanahan v. Madison,* 57 Wis. 276, 15 N. W. 154; *Midland T. C. Co. v. Illinois S. Co.* 163 Wis. 190, 157 N. W. 785.

For the most part they are cases brought by several plaintiffs or against several defendants having a common interest where injunction and damages were sought, and where it was held that there was a misjoinder of causes of action. This was in accordance with the rule early declared by Chancellor WALWORTH in *Murray v. Hay,* 1 Barb. Ch. 59:

"There is no inflexible rule as to joinder of parties in the court of chancery. Yet, as a general principle, several complainants, having distinct and independent claims to relief against a defendant, cannot join in a suit for the separate relief of each. Nor can a single complainant, having distinct and independent claims to relief against two or more defendants severally, join them in the same bill. But there are many exceptions to this rule; and the court exercises a sound discretion in determining whether there is a misjoinder of parties under the particular circumstances of each case."

In none of these cases does the bill or complaint base the claim for relief on any such concert of action or conspiracy as is set forth in the present complaint, and they are not inconsistent with cases which will be later referred to in this opinion where different kinds of relief were granted against various defendants.

Counsel argue that several different statutes are relied on by the plaintiff to sustain the action; that several different causes of action are stated in reliance on these different statutes; and that for this reason there is misjoinder. To this proposition the following cases are cited: *State ex rel. Att'y Gen. v. Janesville W. Co.* 92 Wis. 496, 66 N. W. 512; *Superior v. Douglas Co. Tel. Co.* 141 Wis. 363, 122 N. W. 1023; *Knapp v. Deer Creek,* 162 Wis. 168, 155 N. W. 940.

The first of these cases was an application under sec. 3241, Stats., for leave to forfeit the charter of the defendant, and it was expressly held that the proceeding was not in the nature of a bill in equity. The second case was an action by the city of Superior to enjoin the defendant from removing from the city and library buildings, telephones installed under a special contract made prior to the passage of the public utility law. The state railroad commission was joined as a defendant, and the complaint prayed for nullification of its order requiring discontinuance of the service. It was held by a majority of the court:

"That the statutory action created to enable a party aggrieved by an order of the railroad commission, by action against such commission to challenge the validity of such order, is not joinable with another action of primary import against some other party, to prevent the latter from complying with such order." *Superior v. Douglas Co. Tel. Co.* 141 Wis. 363, 372, 122 N. W. 1023.

Mr. Justice MARSHALL and Mr. Justice BARNES dissented and Mr. Chief Justice WINSLOW took no part in the decision.

The third of these cases was for an injunction to compel the construction of ditches as required by sec. 1388b, Stats. It was held that the statute gave a new right to adjacent landowners against municipalities and prescribed the remedy: a remedy at law for damages, and excluded the right to resort to equity.

It is the claim of counsel for the state that the action is brought by the state for the invasion of one primary right, namely, that of the state to have trade and commerce free from the unlawful combination alleged. There is no doubt that such combinations as are described in the complaint, to fix prices, restrain trade, prevent competition, and create monopolies, are illegal. They were unlawful at common law, and would be unlawful in this state even if there were no statute on the subject. They were held illegal in this state before sec. 1747e was enacted. They have been declared illegal in many of the states, and by Congress so far as relates to interstate commerce. Nor is there any doubt that the state is charged with the right and duty to protect the public from the burden of excessive prices when caused by such combinations.

There is much discussion in the briefs of the meaning of the terms "cause of action" and "primary right" and "subject of the action." In two very elaborate opinions, one by Mr. Justice MARSHALL and the other by Mr. Chief Justice WINSLOW, there was a very full discussion of the meaning of these terms (*Emerson v. Nash,* 124 Wis. 369, 102 N. W. 921; *McArthur v. Moffet,* 143 Wis. 564, 128 N. W. 445); and it would serve no useful purpose to attempt to make clear a subject which confessedly is involved in much confusion. There are a few propositions relevant to the present discussion which are generally recognized as sustained by the authorities. One of these propositions is thus stated by Mr. Pomeroy:

"Every judicial action must therefore involve the following elements: a primary right possessed by the plaintiff, and a corresponding primary duty devolving upon the defendant; a delict or wrong done by the defendant which consisted in a breach of such primary right and duty; a remedial right in favor of the plaintiff, and a remedial duty resting on the defendant springing from this delict; and finally the remedy or relief itself. Every action, however complicated or however simple, must contain these essential elements. Of

these elements, the primary right and duty and the delict or wrong combined constitute the cause of action in the legal sense of the term, and as it is used in the codes of the several states."

"From one cause of action, that is, from one primary right and one delict being a breach thereof, it is possible, and not at all uncommon, that two or more remedial rights may arise, and therefore two or more different kinds of relief answering to these separate remedial rights." Pomeroy, Code Remedies (4th ed.) pp. 460, 461, 464.

It is another rule that in determining whether a complaint states more than one cause of action the whole pleading is to be examined to ascertain when there is more than one primary right sought to be established, and this is the test to be applied.

Observing this test, there may be in equitable actions many kinds of relief prayed for without causing a misjoinder of causes of action. There is not necessarily a misjoinder of causes of action although the rights of some of the parties in respect to the general subject of the action may be different from those of others. Again, there is the very familiar rule thus stated by Mr. Pomeroy:

"The rule has already been stated, as one of the foundations of the concurrent jurisdiction, that where a court of equity has obtained jurisdiction over some portion or feature of a controversy, it may, and will in general, proceed to decide the whole issues, and to award complete relief, although the rights of the parties are strictly legal, and the final remedy granted is of the kind which might be conferred by a court of law." 1 Pomeroy, Eq. Jur. (3d ed.) § 231.

A very good illustration of some of the rules above stated will be found in the case of *Zinc C. Co. v. First Nat. Bank,* 103 Wis. 125, 79 N. W. 229. The complaint alleged an elaborate scheme by some of the officers of the bank and others to defraud the plaintiff. Different kinds of relief were prayed for against the different defendants, and among other forms of relief was the prayer to set aside a judgment

fraudulently obtained by the bank against the plaintiff. In discussing the question of misjoinder, in the opinion of Mr. Justice MARSHALL it was said (p. 139):

"There is but one subject of action—the conspiracy to defraud and its consummation to the damage of plaintiff. All the allegations of fact are parts of the presentation of that one subject. The test of whether there is more than one cause of action stated or attempted to be stated in a complaint is not whether there are different kinds of relief or objects sought, but whether there is more than one primary right sought to be enforced or one subject of controversy presented for adjudication."

In *Gager v. Marsden,* 101 Wis. 598, 77 N. W. 922, in a winding-up proceeding to settle the affairs of a bank, creditors appeared as plaintiffs; many fraudulent practices on the part of directors were alleged, and the officers and stockholders were made parties. It was urged by counsel who demurred for misjoinder that five different causes of action were joined, viz.: one to enforce stockholders' and directors' liability as to stock dividends; one against the directors for paying dividends before the stock was paid up; one for publishing false reports; one for various neglects of officers and directors; and one for winding up of the affairs of the bank.

It was held that there was but one cause of action—the closing up of the business of the bank; that the other matters were germane to that cause and necessary incidents of it. The following are among the decisions of this court which further illustrate the rules above stated: *Level Land Co. v. Sivyer,* 112 Wis. 442, 88 N. W. 317; *Blake v. Van Tilborg,* 21 Wis. 672; *Harrigan v. Gilchrist,* 121 Wis. 127, 99 N. W. 909; *Ellis v. Northern Pac. R. Co.* 77 Wis. 114, 45 N. W. 811; *Cole v. Getzinger,* 96 Wis. 559, 71 N. W. 75; *Draper v. Brown,* 115 Wis. 361, 91 N. W. 1001; *St. Croix T. Co. v. Joseph,* 142 Wis. 55, 124 N. W. 1049.

The cases we have cited indicate that when a primary

right has been invaded the complaint may relate to many minor subjects, and facts may be stated constituting independent grounds for relief differing as to different defendants and still the complaint may not be subject to objection for misjoinder of causes of action.

Sec. 2647, Stats., provides:

"The plaintiff may unite in the same complaint several causes of action, whether they be such as were formerly denominated legal or equitable or both.

"But the causes of action so united must affect all the parties to the action and not require different places of trial, and must be stated separately."

No objection is made that the action for injunctive relief requires different places of trial for the several defendants and it is very clear that it affects all the parties to the action. But it is claimed that since a penalty is demanded of each defendant, no other defendant is affected by such claim and that every one of such demands is a separate cause of action.

Sec. 1747e, enacted in 1921, prohibited combinations of the character described in the complaint and provides for forfeitures for violation of the statute. It does not prescribe the methods of procedure in actions to be brought, but does declare in very broad terms that it shall be the duty of the attorney general "to enforce the provisions of this act and to bring an action for the recovery of the forfeiture herein provided for." It was unnecessary to include the procedure for enforcing the provisions of the statute by injunction because statutes then existing made such provision.

It is argued by counsel for defendants that the prayer for relief as to the annulment of charters of domestic corporations and the revocation of licenses of foreign corporations to do business in this state indicates that separate causes of action are united; that such proceedings are authorized by different statutes in which the modes of procedure are prescribed; that those methods must be followed; and that there

cannot be granted in a single action injunctive relief and the revocation of charters and licenses.

Secs. 1791*j* and 1791*l*, Stats., make provision for annulment of charters of domestic corporations where they are found to have united into such conspiracies as are described in the complaint in this action. Secs. 1770*g* and 1770*i* make similar provision for revoking the licenses for doing business in this state of foreign corporations. These sections as to domestic and foreign companies have been in substantially their present form since 1907.

No precedent has been cited where, in the same action, relief has been sought to enjoin an illegal combination of this character and to recover penalties and revoke and cancel charters and licenses of the offending corporations. In this respect this seems to be a case of first impression.

It is undoubtedly true as argued that all of the defendants are not affected alike. Some of them would not be affected by the revocation of charters and licenses of other defendants. All would be affected if forfeitures are enforced. It is important that the statute already quoted does not require that all defendants shall be affected in the same manner, and the cases referred to show that this is wholly unnecessary. Undoubtedly all the defendants are affected by the charge that they have successfully conspired and combined to violate the statute.

We have then this situation: A statute declares illegal such combinations as are described in the complaint, provides penalties for its violation, and requires the attorney general to enforce the provisions of the act. Another statute, sec. 1747*f*, makes provision for restraining by injunctions violations of the law forbidding unlawful combinations of the character described in the complaint. Other statutes provide for the cancellation of charters and licenses of offending corporations which conspire and combine to prevent competition, or control prices of articles in general use.

When actions are brought to prevent such combinations, the consequences to different defendants, for example foreign and domestic corporations, are different in some respects. Does it follow from this that in order to enforce the provisions of the act a separate suit must be brought against every individual and every corporation joining in the conspiracy for penalties, and that a separate suit must be brought against every member of the combination if a cancellation of its license or charter is contemplated? We do not think so. We are disposed to the view that the primary right of the state is to prevent the continued violation of the statute by means of the combination alleged to be unlawful. This is a matter of far greater importance than the collection of the penalties.

The delict of the defendants is the conspiracy alleged and their acts in its execution. The primary right and duty of the state and the wrong of the defendants constitute the cause of action, and we regard it as one cause of action, although as incidental to it there may be different forms of relief as against the different defendants.

Hence it is our conclusion that there is no misjoinder of causes of action.

*Was the commencement of the action duly authorized?*

It is contended by counsel for defendants that the complaint is defective in failing to show that the attorney general has authority to bring the action; that his powers are limited by statute; and that he must find authority in the statute when he brings an action in the name of the state. Several decisions of this court are cited to this proposition. *State v. Milwaukee E. R. & L. Co.* 136 Wis. 179, 116 N. W. 900; *State ex rel. Haven v. Sayle,* 168 Wis. 159, 169 N. W. 310; *State v. Snyder,* 172 Wis. 415, 179 N. W. 579.

There is no allegation in the complaint that the action is brought pursuant to a request of the governor or either branch of the legislature pursuant to sec. 14.53 of the

Statutes. It is argued that the statute authorizing actions against illegal combinations for injunctive relief has not been complied with. That statute, so far as material, is as follows:

"The several circuit courts may prevent or restrain, by injunction or otherwise, the formation of any such contract or combination or the execution of the purposes thereof. The several district attorneys shall, upon the advice of the attorney general, who may appear as counsel in any such case, institute such actions or proceedings as he shall deem necessary to prevent or restrain a violation of the provisions of the preceding section, which shall be begun by way of information or complaint as in ordinary actions, setting forth the cause and grounds for the intervention of the court and praying that such violation, whether intended or continuing, shall be enjoined or otherwise prohibited." Sec. 1747*f*, Stats.

The action was brought in Milwaukee county and the summons and complaint were signed by the attorney general, the special assistant attorney general, and by the district attorney of that county. The argument is that this shows that the action was not brought by the district attorney on the advice of the attorney general but by the attorney general.

It is clear that under the express language of the statute, on the advice of the attorney general, the district attorney had the right to institute the action and that the attorney general had the right to appear as counsel. We attach little importance to the order in which the attorneys for the state signed the complaint and summons or to the fact that the attorney general omitted to sign his name as "of counsel." We find no difficulty in coming to the conclusion that the statute was complied with; that the suit was instituted by the proper officers with the sanction and advice of the attorney general.

In the same way objection is made to the complaint on the ground of failure to show authority of the attorney

general to institute any proceeding for the collection of penalties incurred. Sub. 2, sec. 1747c, quoted in the early part of this opinion, declares it to be the duty of the attorney general to enforce the provisions of the act. It is further declared to be his duty to bring an action for the recovery of the forfeitures "whenever complaint shall be made to him and evidence produced which shall satisfy him that there has been any violation thereof." The statute then proceeds to require district attorneys on the advice of the attorney general, as in sec. 1747f, to institute actions to recover forfeitures for violation of the act.

The statute seems to show the legislative intent that there shall be no failure to institute proceedings for the violation of the act. It is first made the duty of the attorney general to enforce its provisions. If he should neglect that duty, we see no reason why he could not be compelled by a proper legal proceeding to perform it.

Then there is the same provision for bringing the action by district attorneys for injunctive relief which has already been discussed, and the same reasoning applies.

The objection is further made that there is no statute authorizing the attorney general to institute any proceeding for the purpose of revoking or canceling the charters and licenses of domestic and foreign corporations. Secs. 1791j and 1770g deal respectively with such corporations and provide that, if they enter into any combination or conspiracy to restrain trade and competition or fix prices of articles in common use in this state, their charter shall be revoked or their license to do business in this state shall be canceled.

Secs. 1791l and 1770i relate to the mode of bringing proceedings for forfeiture of charters or cancellation of licenses. In substantially the same language they provide that on complaint being made to the attorney general and evidence produced to him which shall satisfy him that the

corporation has violated any of the conditions specified in the several sections, he shall forthwith bring an action in the name of the state to have the charter revoked or the license canceled as the case may be. The complaint does not state that complaint was made to the attorney general or evidence produced to him, and this is urged as a necessary allegation.

Another section, 1791$k$, makes it the duty of the attorney general under the conditions specified to make inquiry of domestic corporations as to facts which may have a bearing on the question whether there has been a violation of the anti-trust laws. The following paragraph in the elaborate and very able opinion of the trial judge expresses the view we take as to the construction of these statutes:

"I think what the legislature intended was that any person having knowledge of the violation of these sections might make complaint, either written or oral, to the attorney general, and produce evidence before him for the purpose of having him act, but if the attorney general obtains knowledge from any source whatsoever without any complaint having been made to him he may, upon his own motion, act under sec. 1791$l$, and the mere fact of his charging a violation of these sections in his complaint and instituting the action is all that is necessary, as that of itself is sufficient evidence of his being satisfied that such corporation has violated the conditions of these sections."

We believe that it was the intention of the legislature to confer power on the attorney general to institute proceedings to revoke charters or licenses for violation of these statutes; that the various modes provided for obtaining information were for the benefit of the state and not for that of offenders. The clause in the statutes that the attorney general should act upon complaint made to him and evidence produced which satisfied him that an offense had been committed gave notice to the public of the manner in which proceedings could be commenced. It may have been the intent

that if the attorney general failed to institute proceedings he could be compelled by *mandamus* to perform the duty which was commanded.

We are convinced that the statutes we have referred to authorized the commencement of the action in the manner in which it was brought.

There is very elaborate argument in the various briefs on other phases of this subject. It is claimed by counsel for the state that sec. 1747*e* gave the attorney general absolute power in his own discretion to bring the action; that the right is also conferred by sec. 3236, Stats.; that when public interests are involved and positive duties are imposed there is the implied power. All of these subjects have been carefully and ably argued by the respective counsel, but in view of the conclusion we have reached it seems unnecessary to discuss the questions thus raised.

*As to the mode of enactment of ch. 458, Laws 1921 (secs. 1747e, 1747f, Stats.).*

Sub. 3 of this act made an appropriation "to the attorney general a sum sufficient to carry out the provisions of this act, not exceeding the sum of $10,000 annually."

Counsel for defendants argue that this statute, containing an appropriation, was not legally passed because it was not referred by the assembly to the joint finance committee before the final vote was taken.

No authority need be cited to the familiar rule that the court may take judicial notice of the journals of the legislature to determine whether the requirements for the enactment of statutes have been complied with. The bill in question had passed the usual pilgrimages as to introduction, references, hearings in committee, reports of committees, but although it was referred to the joint finance committee by the senate it was not so referred by the assembly, and the passage of the bill by that body preceded reference to the

finance committee by the senate.   Sec. 13.06 of the Statutes provides:

"All bills introduced in either house for the appropriation of money by the legislature; all accounts or claims presented in either house; and all bills provided for revenue. or relating to taxation, shall be referred to the committee on finance before being passed or allowed."

Sec. 8, art. VIII, of the constitution provides:

"On the passage in either house of the legislature of any law which imposes, continues or renews a tax, or creates a debt or charge, or makes, continues or renews an appropriation of public or trust money, or releases, discharges or commutes a claim or demand of the state, the question shall be taken by yeas and nays, which shall be duly entered on the journal; and three fifths of all the members elected to such house shall in all such cases be required to constitute a quorum therein."

Counsel for defendants argue that sec. 13.06 of the Statutes means that a bill calling for the appropriation of money must be referred by each house to the finance committee before the final vote is taken by that house; that this is necessary to prevent hasty and inconsiderate action. It is contended that since this is the proper construction of the act the requirement cannot be disregarded until the statute is changed, and that ignoring the statute by the legislature does not amount to a repeal.

Counsel for the state argue that the section in question is a mere rule of procedure provided by the legislature, which it may dispense with or disregard.   It is also argued that since the journals were silent as to any such reference, compliance with the statute will be presumed until the contrary appears, and that even if the statute was not complied with the appropriation clause was not an inducement for the passage of other sections and they were not thereby invalidated.

Many cases are cited by the respective counsel on these

propositions which it becomes not necessary to discuss in view of the conclusion we have reached. There is no constitutional requirement involved. The committee referred to in the statute is a joint committee composed of members of both houses. In the senate the bill was referred to that committee.

It will be observed that sec. 13.06 does not state that the bill shall be referred to the finance committee by each house before final passage. The language is that it "shall be referred to the committee on finance before being passed or allowed."

It may be that it would be desirable, as argued by defendants' counsel, that each house should refer bills for the appropriation of money to the finance committee before it takes final action, but as we construe the statute it does not make any such requirement. This is a question of policy for legislative, not judicial, determination.

*As to the constitutionality of ch. 458, Laws 1921 (sec. 1747e, Stats.).*

A very elaborate and ingenious argument is made by defendants' counsel urging that the legal effect of the act is to declare unlawful every contract for the manufacture or sale of any commodity if such contract provides for a fixed price or fixes the amount or quantity of the commodity to be manufactured or sold.

For the purpose of the argument counsel separate sec. 1747e into different paragraphs; discuss the several paragraphs; and arrive at the conclusion that there are two classes of contracts declared unlawful by the act: (1) those *intended* to restrain competition, and (2) those which in any manner control or fix prices or limit or fix the amount or quantity to be manufactured or sold, or fix or control the price to the public. It is contended that the acts prohibited in the second group cannot be qualified by any words of limitation found in the clause describing the first group.

It is hardly necessary to cite authorities for the familiar rule for construing statutes that the court should give effect to the intent when that is clear rather than to the letter of the act; that the intent is to be gathered from the whole statute taken together, and not from words and phrases separate from the context. In arriving at the intent the object and purpose of the statute are to be considered.

Here we have a statute entitled "An act to protect trade and commerce against unlawful trusts and monopolies." The argument of counsel disconnects that part of the statute which relates to controlling and fixing the price and limiting the quantity, and fixing the standard, from the preceding language. It also disconnects the preceding portions from the words near the middle of the section, "to the public."

Counsel also lay great stress on the fact that the word "or" precedes the words "fix any standard," etc., as separating the final prohibitory clause from the other parts of the section. In our opinion the attempt to separate the different clauses, giving to each a meaning apart from what precedes and follows, does not greatly help in arriving at the true meaning of the statute.

In the beginning of the statute, combinations and conspiracies intended to restrain or prevent competition in the supply or price of articles in general use in the state are named as the subject of the legislation. In the same sentence the acts of the conspiracy or combination which constitute a restraint of trade are briefly described or defined. In the closing part of the sentence the "price to the public" is connected with what precedes.

It seems very clear to us that the whole object of the statute was to prohibit combinations and conspiracies from illegally restraining trade and commerce. This may be accomplished by conspiring to prevent competition, by conspiring to control, or fix or limit the amount to be produced. We do not think this section can be fairly construed as prohibiting any legitimate contracts, but only those which

are tainted by an unlawful combination tending to the public detriment.

Applying the rule that in determining the meaning of the section of a statute it should be considered as a whole and not in piecemeal, and the other rule that in passing on the constitutionality of a statute we must presume in favor of its validity until the violation is shown beyond reasonable doubt, we hold that this objection is not well taken.

The constitutionality of the statute is attacked on another ground. Counsel for defendants invoke the well known rule that when a statute contains provisions which are void the entire statute may be declared illegal if the valid and the void portions are so connected or interwoven that they cannot be separated and it is plain that the objectionable parts of the statute were an inducement to the legislature to enact the other parts of the same statute.

In making this argument they claim that secs. 1747*h*, 1747*h*—1, 1747*h*—3, and 1747*h*—4 are unconstitutional, and that in considering the validity of the act of 1921 the court should apply the test of constitutionality as if the anti-trust laws as they now exist had been originally enacted in their present form.

These sections were enacted at different times. They relate to exemptions from the provisions of the anti-trust laws, under certain conditions, of labor unions or other associations of laborers, associations of farmers, and those engaged in like employment, and they permit collective bargaining by associations of producers of agricultural products, and employees, when done for their individual benefit. The latest of these sections as they now appear in the Wisconsin Statutes was enacted in 1919.

Secs. 1747*e* and 1747*f* were enacted as ch. 458, Laws of 1921. That statute makes no reference to any other and contains none of the exceptions objected to. The exemption statutes above referred to were collected by the revisers of the Statutes and placed in the same chapter of the Statutes

of 1921 as secs. 1747*e* and 1747*f*, but were not enacted or re-enacted by the legislature of that year.

This raises the question whether we would be justified in holding that these sections, enacted, some of them, in substance many years ago, were, even if void, the inducement for the enactment of the statute of 1921. To so hold would seem to be an extension of the rule above referred to, and no authority is cited for such a ruling. We are inclined to the view that the statute under consideration should not be condemned as unconstitutional on this ground and that we are not called upon to decide whether the various sections objected to are constitutional or not.

An examination of the complaint will show that it contains no averments that the defendants are continuing the alleged unlawful combination, or that they threaten to continue it in the future. All the allegations are in the past tense and relate to transactions which were completed. The objection was made in the oral argument and in the briefs that for this reason the complaint stated no cause of action for injunctive or equitable relief.

The objection has been but little discussed in the oral argument or the briefs, possibly because the defendants may have thought that the defect could be easily remedied by amendment. Nevertheless the objection is squarely presented and we cannot disregard it.

It is the basis of plaintiff's claim that the action is in equity to prevent an unlawful combination from continuing wrongful acts to the detriment of the public, and that the other relief is incidental to their purpose. Proceeding on the theory that an equitable cause of action is stated, it is prayed that the court retain jurisdiction to annul and cancel certain charters and licenses and grant judgment for money damages against the defendants. The relief prayed is not mandatory in its nature, but preventive.

It is elementary that in such cases there should be allegations of threatened wrong doing, or at least that the de-

fendants are continuing the mischief sought to be remedied. 1 Joyce, Injunctions, §§ 40, 41a; 1 High, Injunctions (3d ed.) § 628; 22 Cyc. 927; 10 Ency. of Pl. & Pr. 947, 948; *Diedrichs v. N. W. U. R. Co.* 33 Wis. 219; *Church v. Joint School Dist.* 55 Wis. 399, 13 N. W. 272; 2 Beach, Eq. Jur. § 645.

We regard the rule as so well settled that injunctive relief of the kind here sought cannot be given in the absence of such allegations as have been pointed out that we must hold that the complaint fails to state a cause of action for injunctive relief. To hold otherwise would reverse former decisions of this court and set a precedent we are unwilling to establish. If the facts which are necessary to supply the defect exist, they could be stated in a single short paragraph and the complaint amended if counsel for the plaintiff so elect.

It might be urged that although the complaint fails to state a cause of action in equity it does state causes of action at law and therefore is not subject to a general demurrer. If the demurrer were to be overruled on this theory it would be necessary to sustain it on the ground of misjoinder of causes of action, since it is only on the ground that the action is equitable in its nature, stating a single cause of action, that we hold that there is no misjoinder of causes of action.

Including reply briefs, six different briefs have been filed, for the most part relating to other objections than the one last discussed. Under all the circumstances it has seemed best to consider these other objections so that if the litigation should be continued it would not be unnecessarily delayed.

The result of the decision is that there is no misjoinder of causes of action; that the action was brought under proper authority; that the statute in question was legally enacted; that it is constitutional; that for the reasons stated the complaint fails to state a cause of action for injunctive relief, but is subject to amendment.

*By the Court.*—The order appealed from is reversed, and

State v. P. Lorillard Co. 181 Wis. 347.   Dissent.

cause remanded with directions to sustain the demurrer and for further proceedings according to law.

ROSENBERRY, J. (*dissenting*). I cannot concur in the view that there is no misjoinder of causes of action. It is my opinion that secs. 1791*j* to 1791*m*, Stats., inclusive, create a new right and prescribe the remedy therefor. By a long line of decisions it is held that where a new right is created and the statute creating the right prescribes the remedy, the remedy so prescribed is exclusive. *Chicago & N. W. R. Co. v. Railroad Comm.* 162 Wis. 91, 155 N. W. 941; *State ex rel. Cook v. Houser,* 122 Wis. 534, 100 N. W. 964, and cases cited.

Conceding, as the court holds, that the plaintiff's main primary right is that created by sec. 1747*e*, and that in an action to restrain the continuation of an unlawful combination as defined in that section the court may award judgment visiting upon the guilty parties the legal consequences of their guilt as defined in that section and provided in succeeding sections, the right to forfeit the charter of a Wisconsin corporation does not arise under sec. 1747*e* or the succeeding sections, but under secs. 1791*j* to 1791*m*, inclusive, so that while a single unlawful act may give rise to two distinct causes of action arising under different laws, it does not warrant the joinder of those causes of action. If the provisions relating to ouster contained in secs. 1791*j* to 1791*m*, inclusive, were included in secs. 1747*e* and 1747*f*, a different result might follow, but the legislature has seen fit not to include these provisions in a single act and it has seen fit to prescribe a specific remedy for the right created by secs. 1797*j* to 1797*m*, inclusive.

ESCHWEILER, J. (*dissenting in part*). Because the complaint sets forth facts and relies upon statutory provisions upon which are sought several, distinct, and separate forms of relief such as would support and require separate and in-

dependent causes of action, I am convinced that the demurrer on the ground of improper joinder of several causes of action should have been sustained.

A motion for a rehearing was denied, with $25 costs, on October 16, 1923.